Johnny **WASHINGTON** et al.,
Appellants,

v.

The **STATE** of Oklahoma,
Appellee.

No. F–76–254.

Court of Criminal Appeals of Oklahoma.

Sept. 20, 1976.

Tim K. Baker, Tahlequah, for appellants.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellants, Johnny Washington, James Gritts, and Charlie Gritts, hereinafter referred to as the defendants, were charged in Case No. CRF–74–118, in the District Court, Cherokee County, with the offense of Larceny of Domestic Animals, in violation of 21 O.S.1971, § 1716. Pursuant to the jury's guilty verdicts, the trial court sentenced the defendants to serve three (3) years in the Oklahoma State Penitentiary, respectively. From those judgments and sentences a timely appeal has been perfected to this Court.

The State called Bill Nodine as its first witness. Mr. Nodine testified that he was employed by Mr. Tom Tate as a ranch hand. On September 28, 1974, Mr. Nodine, accompanied by Mr. Paul Turtle, drove to a site on Mr. Tate's ranch. Upon reaching this location, Mr. Nodine testified that he found a dead calf with a small hole over one eye. At this point, Mr. Nodine contacted Mr. Tate's ranch foreman, Bartow Hicks. Mr. Hicks, Mr. Nodine and Bill Fain, another employee of the ranch, returned to the site of the dead calf. A short time later, Tom Tate, the owner of the ranch where the calf was found, and Rudy Briggs, special investigator for the District Attorney's office, arrived on the scene. After viewing the calf, Mr. Tate and Mr. Briggs left the scene for 10 or 15 minutes to get some coats. Mr. Nodine, Mr. Hicks, and Mr. Fain stayed with the calf. While Mr. Tate and Mr. Briggs were gone, a white pickup drove up to the site. Mr. Nodine testified that four individuals, three of whom he identified as the defendants, got out of the pickup, picked up the calf and moved it toward the pickup. The witness testified that Mr. Hicks shouted at the defendants, causing them to stop moving the calf. All four men, including the defendants, were detained until the return of Mr. Tate and Mr. Briggs, at which time Mr. Briggs arrested them and gave them their *Miranda* warnings.

The State's next witness was Tom Tate. Mr. Tate testified that he owned a ranch in Cherokee County and Adair County which was about 15 miles northeast of Tahlequah. He further testified that he received a telephone call on September 28, 1974, from the ranch foreman, Bartow Hicks, to the effect that one of his calves had been shot. Mr. Tate called Rudy Briggs, and the two of them drove to the site, located in Cherokee County, where the calf was located. After examining the calf, Mr. Tate identified it as being his calf by the brand on the left side and the ear mark. According to the witness, the calf was still warm and there was blood around the hole above the calf's eye. At this point, Mr. Tate and the others searched the area for shell casings and found none. Then Mr. Tate cut the calf's throat in order to save the meat by letting it bleed.

The witness further testified that he and Mr. Briggs left the site to get some coats. Upon their return, they observed that the defendants had been detained. Mr. Briggs placed them under arrest and gave them their *Miranda* warnings. Mr. Tate testified that he took some pictures of the calf. He identified the defendants as the same persons arrested by Mr. Briggs on September 28, 1974, and stated that he had not given any of the defendants permission to take the calf.

The next witness for the State was Bartow Hicks. His testimony substantially corroborated the testimony of Mr. Nodine.

The State then called Bill Fain to testify. Mr. Fain testified that he was employed by Mr. Tate on September 28, 1974. He further testified that on that day he went to the scene where the dead calf was found. He testified that he saw the defendants lift up the calf and move it toward their truck, and he identified the defendants.

The State's next witness was Rudy Briggs. Mr. Briggs stated that he was a special investigator for the District Attor-

ney's office. He testified that he arrested the defendants and gave them their *Miranda* warnings. He further testified that he found a partial box of .22 shells in the white Ford pickup which the defendants had driven to the scene where the dead calf was found. The State submitted the box of shells as State's Exhibit No. 3.

After Mr. Briggs was excused, the State rested. The defendants did not call any witnesses.

The first assignment of error argued by the defendants is that it was error for the trial court to allow Tom Tate, a State witness, to be excluded from the rule of sequestration and remain in the courtroom to assist the prosecution and not require him to testify first.

■ In making this argument, the defendants failed to support it by citing authorities. Rule 1.7C of this Court requires that the defendant must support his assignments of error with authority. The defendants in this case did not meet that requirement. In *Bryant v. State*, Okl.Cr., 478 P.2d 907 (1970), we stated:

"This Court has repeatedly held that it is necessary for counsel for plaintiff in error not only to assert error, but to support his contentions by both argument and the citation of authorities. Where this is not done, and it is apparent that the defendant has been deprived of no fundamental rights, this Court will not search the books for authorities to support the mere assertion that the trial court has erred. See *Sandefur v. State*, Okl.Cr., 461 P.2d 954 and *Collins v. State*, Okl.Cr., 407 P.2d 609."

In reviewing the record, we find that the defendant was not deprived of any fundamental rights. In fact, we note that the defense counsel consented at the trial to the presence of the complaining witness, Tom Tate. (Tr. 3) The first assignment of error has no merit.

■ In their second assignment of error the defendants contend that the verdict is not sustained by sufficient evidence.

This Court discussed the crime of Larceny of Domestic Animals in *Alexander v. State*, Okl.Cr., 400 P.2d 458 (1965). We stated:

" . . . [T]his court has uniformly held that in order to support a conviction for larceny of domestic animals, it is necessary to allege and prove the ownership of the animal stolen, and a felonious intent on the part of the taker to deprive the owner thereof and to convert the same to his, the taker's own use." (Citations omitted)

See *Hobbs v. State*, Okl.Cr., 435 P.2d 181, 184 (1967). In the instant case, the State sufficiently proved the elements of the crime. This Court has consistently held that we will not disturb the verdict for insufficiency of the evidence where there is evidence from which the jury could have logically and reasonably found the defendants guilty. See, *Hunter v. State*, Okl.Cr., 478 P.2d 1001 (1970), and *Box v. State*, Okl.Cr., 505 P.2d 995 (1973). Upon a careful review of the record, we find that the evidence was sufficient to support the verdict of the jury.

■ The final assignment of error is that the accumulation of errors and irregularities in the trial, when considered as a whole, deprived the defendants of a fair trial and denied them due process of law. We can find no such accumulation of errors and irregularities. In *Haney v. State*, Okl.Cr., 503 P.2d 909 (1972), this Court held that if the previous assignments of error are without merit, then the final contention that there was an accumulation of error is without merit. We stated in that case:

" . . . Inasmuch as we have found the first three assignments of error to be without merit, it follows that the fourth assignment is similarly without merit."

See, *Glover v. State*, Okl.Cr., 524 P.2d 51 (1974), and *Wright v. State*, Okl.Cr., 531 P.2d 696 (1975).

We have examined the record and reviewed the testimony, and the record dis-

closes that the defendants were given a fair and impartial trial. There was no accumulation of error which deprived the defendants of a fair trial or due process of law. Therefore, we hold that this assignment of error is without merit.

The judgments and sentences appealed from are therefore, *AFFIRMED*.

BRETT, P. J., and BLISS, J., concur.