James Dee Francis SHEKER, a/k/a
Dallas Dean Rust, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–80–756.

Court of Criminal Appeals of Oklahoma.

April 26, 1982.

Bert A. Richard, Jr., Guthrie, for appellant.

Jan Eric Cartwright, Atty. Gen., Robert W. Cole, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

James Dee Francis Sheker, a/k/a Dallas Dean Rust, hereinafter referred to as the defendant, was convicted of Second Degree Murder, in Logan County District Court, Case No. CRF–78–42, was sentenced to an indeterminate term of imprisonment of ten (10) years' to life, and he appeals.

Briefly stated, the evidence presented at trial establishes that the defendant was employed as a consultant with an employment agency in Chevy Chase, Maryland during the summer of 1975. While residing in nearby Washington, D. C., Farlan Speer sought the agency's assistance with employment and it was there that he met defendant. A short time thereafter, the defendant terminated his job with the agency and traveled to Oklahoma where he applied for a drivers' license under the name of Michael Carr Speer. Within this same time frame, Farlan Speer's records were discovered missing from the Maryland employment agency. In September, 1975, Farlan Speer forwarded to defendant some personal records, including his college diploma, birth certificate and a court order changing his name from Michael Carr Speer to Farlan Speer. In October, 1975, Speer informed his parents that he had an offer of employment which would take him out of the country. He was to meet the defendant in Oklahoma and firm up the employment opportunity. Speer's parents did not see their son again after the October visit. On November 18, 1975, Speer rented a room at Howard Johnsons' Motel in Tulsa. The following day he checked out and was not heard from again. On November 23, 1975, Patrick O'Connor received a telephone call from the defendant who was a long time friend of O'Connor's. The defendant told O'Connor that he had shot and killed a Central Intelligence Agency courier and wished to discuss the incident with him in person. O'Connor flew from Florida to Oklahoma City and met with the defendant. The defendant told him that he was supposed to have met a courier from the C.I.A. who was delivering change of identity documents to him. At the designated location the courier supposedly pulled a gun and began firing at the defendant, who allegedly shot back in self defense killing the individual. O'Connor said that he listened to the defendant's story but he did not believe it. O'Connor accompanied the defendant to a remote place in Logan County where the defendant indicated he had buried the courier. Thereafter, the two men returned to Oklahoma City and O'Connor flew back home to Florida.

During April, 1978, Patrick O'Connor related to the authorities the story told to him by the defendant. O'Connor accompanied investigators to Logan County and pointed out the place the defendant said he buried the courier. The remains of an individual, later identified as Speer, were unearthed. The skull bore two holes in its rear which were determined to have been caused by gun shots. Positive identification was obtained by comparing the teeth and jaw and x-rays thereof, with ante-mortem dental charts and x-rays from Speer's dentist.

Since disposing of Speer in 1975, the defendant continually masqueraded under his assumed identity. He made arrangements for, and purchased, a class ring from Stanford University, a school from which Speer was a graduate. He sought employment through various agencies and attempted to put together and have funded several research projects. When arrested in Califor-

nia the defendant had six pieces of identification in his possession in the name of Farlan Speer and was wearing a Stanford University Ring (P.H.D.) bearing initials MCS. (Michael Carr Speer)

In one of eight assignments of error, the defendant maintains that the trial court abused its discretion by admitting into evidence the skull of the deceased. The reasons for introducing the exhibit were apparently two-fold. First, the deceased was allegedly shot in November, 1975, and the victim's remains were not uncovered until April, 1978. Identification of the remains was effected by comparing post mortem x-rays of the teeth and jaw and the exhibit with charts and x-rays made by the victim's dentist. The comparisons, except for one alleged inconsistency, established that the buried remains were those of Michael Carr Speer, III, a/k/a Farlan Speer.[1] Second, the skull depicted two holes in its rear which the pathologist explained were gunshot wounds and most likely the cause of death.[2]

The defendant argues that the "gross nature" of the exhibit had tremendous prejudicial effect on the jury and its probative value was thereby outweighed. In a similar case decided by our sister state of North Carolina the admission into evidence of a segment of skin from a victim's leg bearing a tatoo was assigned as unnecessarily gruesome and repulsive. Addressing this proposition in *State v. Williams*, 17 N.C.App. 39, 193 S.E.2d 452 (1972) the North Carolina State Court held:

Defendant's contention as to this evidence is without merit. While there appears to be no prior decision in this jurisdiction directly in point, we think the validity of the evidence is supported by analogous decisions.

In *State v. Frazier*, 280 N.C. 181, 199, 185 S.E.2d 652, 663 (1972), the court quoting from *State v. Atkinson*, 275 N.C. 288, 311, 167 S.E.2d 241, 255 said: 'The fact that a photograph depicts a horrible, gruesome and revolting scene, indicating a vicious, calculated act of cruelty, malice or lust, does not render the photograph incompetent in evidence....' In *State v. Muse*, 280 N.C. 31, 185 S.E.2d 214 (1971), the court held that any object which has a relevant connection with the case is admissible into evidence.

In the instant case the identity of the person murdered and the identity of the body found were issues for determination. We hold that under the facts presented the challenged evidence was properly admitted.

In consideration of the assignment of error it is also proper to state that the introduction of photographs of a victim taken subsequent to a homicide is largely discretionary with the trial court and unless this discretion is abused there is no cause for reversal. *Jones v. State*, 542 P.2d 1316 (Okl.Cr.1975). One limitation was expressly stated in *Oxendine v. State*, 335 P.2d 940 (Okl.Cr.1958) wherein no conflict had arisen as to the cause of death or the location of the wounds. Nonetheless, full colored photo slides of the deceased *after dissection* was performed were allowed into evidence. In paragraphs 2 and 3 of the syllabus thereto we held:

If the principal effect of demonstrative evidence such as photographs is to arouse the passion of the jury and inflame them against the defendant because of the horror of the crime the evidence must be excluded. On the other hand, if the evidence has probative value with respect to a fact in issue that outweighs the danger of prejudice to the defendant, the evidence is admissible even if it is gruesome and may incidentally arouse the passion of the jury.

Also see, *Vavra v. State*, 509 P.2d 1379 (Okl.Cr.1973); and *Hopkins v. State*, 506

---

1. An alleged inconsistency reflected on the dental chart was cleared up due to the actual examination of the teeth and jaw of the skull and a comparison thereof with the chart and x-rays.

2. When Dr. Forbes, the medical examiner, first examined the skull he flushed out some dried tissue which contained metal fragments consistent with gun shot.

P.2d 580 (Okl.Cr.1973), and the case authorities collected therein. In the case at bar the identity of the person murdered and the identity of the body found were issues for determination similar to *State v. Williams,* supra. Establishing the identity of the deceased and correcting a seeming discrepancy outweighed whatever prejudicial impact the admission of the exhibit may have had on the jury. Further, the fact that the bullet holes were at the back of the skull refutes the claim that the defendant shot in self-defense. We find no error.

■ In his next assignment of error the defendant argues that evidence of several business proposals to which he was a party was evidence of other crimes, not relevant to the issues at trial, and violated this Court's recent decision of *Burks v. State,* 594 P.2d 771 (Okl.Cr.1979). This argument has no merit.

The State relied partly on evidence of defendant's activities to establish his guilt. The State's theory of the case was that after meeting Mr. Speer at the employment agency the defendant assumed Speer's identity and prestigious credentials. To keep his fraud secret he lured Speer to Oklahoma and murdered him. Thereafter, the defendant portrayed himself to all as the highly educated individual that Speer was. The defendant's activities subsequent to taking Speer's life were most relevant on the issues of identification and motive. All facets of the impersonation including the business transactions were a part of the res gestae of the crime charged and, as such, admissible. *Burks v. State,* supra. The fact that this evidence indicated Sheker to be a "conman" is insignificant when the evidence also helped to establish that he murdered Farlan Speer.

■ Defendant argues in his third proposition that the prosecutor was guilty of misconduct which denied him a fair trial. Defendant's argument is premised on the failure by the State to have provided him a tape recording which contained a conversation between witness Patrick O'Connor and law enforcement officers.

Although the court had ordered that the tape be made available to the defendant, the State was never able to locate it. When the State informed the court that the tape was lost and attempts to locate it were futile, the defendant moved to suppress all testimony of O'Connor. Defendant's motion to suppress was overruled as was his motion for mistrial. The record indicates that the missing tape contained information already known by the defendant and nothing in addition to the testimony previously given during the preliminary hearing. The defendant vigorously cross-examined O'Connor during preliminary hearing as well as at trial and the witness's testimony was consistent throughout.

In this case the State could not provide the defendant with an item it no longer possessed. Further, the defendant has failed to establish that the tape was inconsistent with other items he already possessed regarding the testimony of Patrick O'Connor. We find no reversible error.

In his next three assignments of error, the defendant contends that several questions by the prosecutor during voir dire and trial were improper, prejudicial and necessitate reversal. We are not persuaded by the arguments and no useful purpose would be served by setting forth those portions of the record to which defendant complains.

■ We have often stated in this jurisdiction that a defendant must not only object to alleged improper statements, but he must go further and move the court to exclude such remarks from the consideration of the jury, unless the error could not be cured by withdrawal of the remarks. *Utt v. State,* 595 P.2d 448 (Okl.Cr.1979); *Hill v. State,* 589 P.2d 1073 (Okl.Cr.1979). While it is true that the defendant did object to two statements by the prosecutor during voir dire, we deem neither fundamental and find that no requests that the court admonish the jury were made.

■ We have carefully reviewed each of the items specified and do not find any one of them standing alone, or all of them when taken together, to have constituted funda-

mental error or to have affected the outcome of this trial. We have observed that the lawyers on both sides clashed several times during the trial of this cause. However, we do not find that any undue advantage was gained by the State to the detriment of the accused and we are absolutely certain that no adverse consequences were caused thereby. *Neal v. State*, 506 P.2d 936 (Okl.Cr.1973).

The defendant next argues that the jury, while dining in a local eating establishment, was exposed to comments by another patron of the restaurant regarding the case.

As a general rule any unauthorized communication to a juror during deliberations is presumed prejudicial with the burden clearly on the State to prove defendant was not prejudiced by a violation of 22 O.S.1971, § 857, which forbids illegal communications with jurors during their deliberations. See also, *Farrell v. State*, 512 P.2d 225 (Okl.Cr.1973).

The record reflects that although third parties were discussing the case while dining at the same place and time as the jury, none of the jurors overheard this discussion. Upon appropriate motion by defense counsel, the jurors were brought into court and testimony was elicited from each one concerning the "conversation". The record of this proceeding supports fully and unequivocally the holding of the trial judge that none of the jurors heard the third parties' conversation. The prosecution met its burden of proof and the irregularity is not cause for reversal. *Gibson v. State*, 512 P.2d 1399 (Okl.Cr.1973).

The defendant's final enumeration of error is that an accumulation of irregularities in the trial of this case, when considered as a whole, deprived him of a fair proceeding. In *Haney v. State*, 503 P.2d 909 (Okl.Cr.1972), we held that if the previous assignments of error are without merit then the final contention that there was an accumulation of error is also without merit. See also, *Ramsey v. State*, 558 P.2d 1179 (Okl.Cr.1977); *Washington v. State*, 554 P.2d 1194 (Okl.Cr.1976).

The record being free of any error which would justify modification or reversal, the judgment and sentence appealed from is AFFIRMED.

BRETT, P. J., concurs in results.

CORNISH, J., concurs.