Richard Riley MORRIS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–75–554.

Court of Criminal Appeals of Oklahoma.

Dec. 6, 1979.

Harry G. Scoufos, III, Sallisaw, for appellant.

Larry Derryberry, Atty. Gen., Joe H. Enos, Asst. Atty. Gen., for appellee.

## OPINION

BRETT, Judge:

Richard Riley Morris was charged in Sequoyah County District Court Case No. CRF–75–55 with the crime of Murder in the First Degree, in violation of 21 O.S.Supp. 1973, § 701.1(2).[1] He was tried by a jury, found guilty, and sentenced to death.

The homicide occurred sometime between approximately 7:00 p. m. on April 4, 1975, and 7:45 a. m. on April 5. The defendant was taken into custody at approximately 10:30 a. m. on the morning of April 5, 1975, and at 12:40 p. m. the same day he signed a printed "waiver of rights" form. At the time he signed the waiver, he was interrogated by investigating officers. The results of this questioning were later incorporated into State's Exhibit No. 24, which was not dated, and which was never signed by the defendant.

Later the afternoon of April 5 the defendant was transported across the State line into Ft. Smith, Arkansas, where he was interrogated for three hours by Arkansas and Oklahoma police officials. He was then returned to the Sequoyah County jail, where he was interrogated again on April 6, 1975. On April 7, 1975, he was questioned again. On April 7, a relative of the defendant was present and urged the defendant to "go ahead and tell the truth."

The April 5, and the April 7 interrogations were taped and recorded in shorthand, but the April 6, interrogation was not recorded at all. The defense motion to produce the tapes of these interrogations was sustained, but all except the last portion of the recordings was erased as the reporter took another statement several days after the motion was sustained. However, the interrogations had been transcribed into one unsigned document, purporting to be the "statement of one Richard Morris."

The defendant, who was 18 at the time of trial, took the stand and indicated that he had reached the ninth grade before dropping out of school. He explained that he had a difficult time reading and studying and had made C's, D's and F's in school. He said he did not know what "waive" meant and that when he made the statements incorporated in State's Exhibit No. 24, he was scared and upset because Officer Gilliam had started talking about execution and because there were so many questions being asked at the same time. He denied killing Henry Ellis; denied ever having been to his house; denied helping anyone else kill him; and denied going to his house to rob him. Officer Gilliam denied threatening the defendant.

1. Repealed by Okl.Sess.Laws 1976, 1st Executive Session, c. 1, § 10, effective July 24, 1976.

The defendant was brought before a magistrate without an attorney on April 8, 1975, when he was advised that one would be appointed for him. Arraignment was continued until April 10, when counsel was appointed.

Insofar as this conviction must be reversed, we need not discuss all the assignments of error raised by the defendant.

■ Title 21 O.S.Supp.1973, § 701.1, the statute under which the defendant was charged, was declared unconstitutional by the United States Supreme Court on July 6, 1976. *Green v. Oklahoma,* 428 U.S. 907, 96 S.Ct. 3216, 49 L.Ed.2d 1214 (1976); *Justus v. Oklahoma,* 428 U.S. 907, 96 S.Ct. 3216, 49 L.Ed.2d 1214 (1976); *Lusty v. Oklahoma,* 428 U.S. 907, 96 S.Ct. 3217, 49 L.Ed.2d 1214 (1976); *Davis v. Oklahoma,* 428 U.S. 907, 96 S.Ct. 3217, 49 L.Ed.2d 1215 (1976); *Rowbotham v. Oklahoma,* 428 U.S. 907, 96 S.Ct. 3218, 49 L.Ed.2d 1215 (1976); *Williams v. Oklahoma,* 428 U.S. 907, 96 S.Ct. 3218, 49 L.Ed.2d 1215 (1976). Therefore, the defendant contends that his conviction is void and the only punishment that can now be imposed is set out in 21 O.S.1971, § 9, the general felony punishment statute. However, this Court held in *Riggs v. Branch,* Okl.Cr., 554 P.2d 823 (1976), that life imprisonment was the proper penalty for conviction of first degree murder under the repealed statute.

The defendant next assigns as error the admission of various State's Exhibits. The defendant's jacket, boots and jeans either were removed from the defendant at the time of his arrest or taken from his home later.

■ The State concedes, that the items confiscated by means of the warrantless search of the defendant's residence were obtained in a "questionable" manner. The search was not only warrantless, it was conducted some hours after the defendant was arrested and was in violation of the Fourth Amendment to the United States Constitution and Art. II, § 30, of the Constitution of the State of Oklahoma.

The defendant complains that other pieces of real evidence were improperly admitted into evidence, as they were irrelevant, incompetent, and immaterial; had no causal connection to him; and were admitted only to bolster the State's case and surround the defendant with unjustified suspicion. The State concedes the immateriality of these exhibits, but argues that the defendant was not prejudiced by their admission, because they tended to be exculpatory rather than inculpatory in nature.

■ Here, the exhibits introduced did not place the defendant near the scene of the crime; nor did they in any way indicate the defendant's guilt. Therefore, we agree that the admission of these exhibits covered the defendant with an unwarranted veil of suspicion, and distracted the jury. For these reasons, they should have been excluded. See, *Herren v. State,* 75 Okl.Cr. 251, 130 P.2d 325 (1942), wherein we held that it was reversible error to have admitted evidence of merchants identifying articles found in defendant's brother's store as being stolen from them when there was no connection shown between the defendant and the stolen articles.

■ The defendant assigns as error the admission of the various "statements" and "waivers" procured from the defendant over the three day period of interrogation. The initial questioning took place in the custodially coercive atmosphere of the County courthouse. Under questioning by at least four police officers, the defendant stated only that he knew nothing about the homicide. Nevertheless, he was officially placed under full custodial arrest and transported to Ft. Smith, Arkansas, to take a polygraph test. The State contends that the trip to Arkansas and the defendant's conversation with his aunt's father were "intervening circumstances" sufficient to sever the taint from the confession ultimately obtained from the defendant. It is our opinion that the forced trip to Arkansas in the company of Oklahoma law enforcement officials compounded, rather than relieved, the illegality of the defendant's confession. Furthermore, the record indicates

that the defendant's meeting with his aunt's father was arranged by the police, and was a secondary interrogative technique employed only after extensive questioning by police had failed to garner a statement.

█ After taking into account the abusive tactics and procedural irregularities hereinbefore discussed, the flagrancy of official misconduct in this case is apparent. Furthermore, consolidating the defendant's statements over the time from April 5, through April 7 into one undated and unsigned document, the prosecutor's persistent opposition to the defendant's motions to produce the primary materials from which that document was transcribed, and recording over the original tapes *after* the defendant's motion to produce was sustained but before the tapes were produced, make the interrogation and confession even more suspect. Also, the statement itself reflects a blatant disregard of the defendant's constitutional rights:

"Q. Now you tell me I want you to tell me, you said you would tell the truth. Tell me where he put it. I know you know where it is at.

"A. No.

"Q. Max Newman: Would you like for all the questions to stop?

"A. Right now.

"Q. Would you like for us to stop questioning you now?

"A. Yeah.

"Q. Max Newman: Tell us where we can find that and we will be through with you."

The interrogation was continued until the information was obtained. We hold that the confession was inadmissible into evidence.

The defendant also argues that there was a material defect in the charging language of the information, and that the defective language was later reflected in the trial court's instructions to the jury. The information states:

"Richard Riley Morris . . . did then and there unlawfully, wilfully, and feloni-

ously, without authority of law, and with a premeditated design to effect the death of one Henry Ellis, the said Richard Morris did while being then and there engaged in committing the crime of *ROBBERY BY FORCE* did kill the said HENRY ELLIS by hitting and beating him with a club and by hammering an icepick *into his head, causing mortal wounds in the body of the said HENRY ELLIS,* from which mortal wounds the said Henry Ellis did languish and die." (Emphasis added)

█ We agree that the information did not, on its face, bring the defendant within the purview of the first degree murder statute, 21 O.S.Supp.1975, § 701.1, which reads, in pertinent part, as follows:

"Homicide, when perpetrated without authority of law and with a premeditated design to effect the death of the person killed, or of any other human being, is murder in the first degree in the following cases:

\*　　\*　　\*　　\*　　\*　　\*

"2. When perpetrated by one committing or attempting to commit rape, kidnapping for the purpose of extortion, arson in the first degree, *armed robbery* or when death occurs following the sexual molestation of a child under the age of sixteen (16) years;" (Emphasis added)

The State argues that this information was sufficient, in that it alleged that defendant used the ice pick in such a way that it became a "dangerous weapon" within the meaning of 21 O.S.1971, § 801, the statutory provision which defines "armed robbery," and that the evidence at trial proved murder in the first degree. The State cites *State v. Hanna,* Okl.Cr., 540 P.2d 1190 (1975), in which we held that "the manner of use of the instrument may be the controlling factor in determining whether it is a 'dangerous weapon.'" In *Swaim v. State,* Okl.Cr., 569 P.2d 1009 (1977), however, we departed from the holding in *Hanna* when we stated that "by the specific use of 'armed' as a limiting adjective to the element of robbery under Section 701.1, ¶ 2, the Legislature did not intend to include all forms of

robbery—i. e., robbery by force or fear under Section 791—within the first degree murder statute."

We need not decide whether under our holding in *Swaim,* supra, an ice pick would be considered a dangerous weapon within the meaning of Oklahoma's armed robbery statute, 21 O.S.1971, § 801, for the State alleged in the information that the homicide occurred during the course of a robbery by force and not during the course of an armed robbery. The information does not allege further facts which, if proven, would constitute a homicide occurring during the course of an armed robbery. Merely naming the instruments through which the killing was accomplished is not an allegation of facts constituting an armed robbery. An insufficient information cannot support a conviction, though it can support a conviction for any lesser offense which is properly alleged. See *Owens v. State,* 162 Tex.Cr.R. 212, 283 S.W.2d 749 (1955); *Ainsworth v. State,* 206 Miss. 559, 40 So.2d 298 (1949). In the instant case, the information did allege facts which, if proven, would support a conviction of murder in the second degree. Therefore, on retrial the defendant can be charged and convicted of no higher degree of homicide than murder in the second degree.

In addition, the defendant complains that he is effectively denied appellate review of the composition of the jury panel because the long-awaited transcript of the trial proceedings did not include the voir dire. As this case must be reversed and remanded for new trial, we need not deal with this issue.

For the reasons stated in this opinion, we *REVERSE* the judgment and sentence appealed from, and *REMAND* the cause to the District Court for the purpose of affording the defendant a new trial, to be conducted in a manner consistent with this opinion.

CORNISH, P. J., concurs.