**Richard Dean SMITH, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–82–276.**

Court of Criminal Appeals of Oklahoma.

Jan. 6, 1984.

Thomas G. Smith, Jr., Asst. Appellate Public Defender, Norman, for appellant.

Jan Eric Cartwright, Atty. Gen., Patrick W. Willison, Asst. Atty. Gen., State of Okl., Oklahoma City, for appellee.

## OPINION

BUSSEY, Presiding Judge:

On July 23, 1981, at approximately 10:30 P.M., five children were walking South on highway 281 near Gracemont, Oklahoma, facing the Northbound traffic lane, when the appellant's Southbound automobile swerved across the center line and opposite lane onto the shoulder, struck three of the children from behind, and sped off into the night. The three children died at the scene from the impact. The two survivors testified at the appellant's trial.

The appellant was first questioned concerning the incident on July 30. At that time he made a tape recorded statement in which he admitted driving his car in the area where the children were killed on July 23, but maintained it was at a time later than 10:30 P.M. He made a second statement on July 31, in Woodward, Oklahoma, subsequent to interrogation by an agent of the OSBI. The appellant admitted that he had hit something on the evening of July 23 while traveling South on highway 281, but did not know what it was. He stated he learned of the children's death the next day from his co-workers.

The appellant was charged and tried before a jury in the District Court of Caddo County for three counts of Murder in the Second Degree. Upon conviction, he was sentenced to fifteen years' imprisonment for each count, with the sentences to run consecutively. He presents three assignments of error upon this appeal.

The appellant first alleges that the second degree murder convictions were unsupported, because no evidence was adduced sufficient to permit an inference by the jury that his acts were intentional, thereby evincing a "depraved mind."

According to our statutory framework, it is not essential that a defendant have a design to effect death, nor must he even have an intent to *injure* anyone to be properly charged with murder in the second degree. See, 21 O.S.1981, § 701.8(1); 21 O.S.1981, § 705. It is only incumbent upon the State to prove that the act alleged to evince a depraved mind was intentional.[1]

As in all cases in which a defendant's intent is at issue, such intent may be proven by circumstantial evidence. *Carpitcher v. State,* 586 P.2d 75 (Okl.Cr.1978). The circumstantial evidence need not exclude every hypothesis, nor must it negate every other possibility than guilt. *Fiorot v.*

1. It is without question that the type of acts prohibited by 21 O.S.1981, § 701.8(1) include the intentional steering of an automobile into or near a small group of persons. See, *Gibson v. State,* 476 P.2d 362 (Okl.Cr.1971), wherein we held the defendant's act of steering the vehicle in which he was a passenger into the path of an oncoming vehicle constituted murder in the second degree.

*State,* 641 P.2d 551 (Okl.Cr.1982). Where there is competent evidence from which the jury could reasonably conclude the defendant was guilty of the crime charged against him, this Court will not interfere with the verdict, even though there is a conflict in the evidence from which different inferences may be drawn. *Warner v. State,* 489 P.2d 526 (Okl.Cr.1971).

■ Thus, although there was no direct evidence that the appellant intentionally drove his automobile into or near the children, we believe that the very nature of the incident and the circumstances surrounding it, support such a conclusion. The appellant's automobile sought the small band of children out from the terrain which stretched before and behind them. It had to cross the entire width of the opposite lane, and onto the shoulder to strike them. The skidmarks on the shoulder of the road beyond the point of impact, which ran parallel to the road for 47 feet, indicated that the appellant had taken some form of aim. Lastly the children had time to notice and comment upon the shadows they cast from the appellant's headlights as he bore down upon them from behind; thus giving rise to the inference that he likewise saw them. The jury's verdict was adequately supported.

■ The appellant secondly alleges that the taped statements he made on July 30 and 31 were erroneously admitted into evidence. He argues that the circumstances surrounding the statements evidence an atmosphere of coercion and involuntariness. In the argument, the appellant makes much of the fact that, at the time of the investigation, he was under a deferred sentence from a prior felony. He argues that since one of the conditions of his deferred sentence was that he at all times cooperate with law enforcement authorities, he was "compelled" to cooperate with every request, lest he risk revocation of the deferred sentence.

The appellant has failed to demonstrate that any threats were made concerning his deferred sentence, or that it was used as a coercive lever. Both tapes reveal the appellant was read his rights, and that he understood them. Furthermore, the State introduced into evidence a written waiver of rights signed by the appellant prior to being interviewed in Woodward. These waivers are of themselves strong evidence of the voluntariness of the appellant's statements. Furthermore, we have fully reviewed the record, including the in-camera testimony of the appellant and the interrogating officers concerning the matters alleged by the appellant to constitute coercion. We agree with the trial court that the appellant's statements were not coerced. This Court has held on numerous occasions that when evidence taken *in camera* is sufficient to support the trial court's ruling that the defendant's statement was voluntarily made, that ruling shall not be disturbed on appeal. *Cooper v. State,* 560 P.2d 1018 (Okl.Cr.1977); *Warren v. State,* 495 P.2d 837 (Okl.Cr.1972).

We find the case of *Morris v. State,* 603 P.2d 1157 (Okl.Cr.1979), cited by the appellant, distinguishable from this case. In *Morris,* the defendant was taken into custody and interrogated for three days by police officers. The defendant's statement itself indicated that his demand to cease interrogation was ignored. See, 603 P.2d at 1160. Additionally, the defendant in *Morris* had a very low level of education, and testified he did not understand what "waive" meant.

In the present case, however, the appellant was informed upon his arrival at the Caddo County District Attorney's office on July 30 that he was not under arrest. As stated above, he was informed of his rights, and stated he understood them. After the initial taping session, he was allowed to leave. Later that evening, the District Attorney contacted him, and arrangements were made for him to be escorted by the investigator for the District Attorney to Woodward the next morning (July 31) for further questioning and a polygraph examination.[2] The fact that the appellant ate or

---

2. There is dispute over the voluntariness of the      appellant's submission to the polygraph exami-

slept little that night cannot be attributed to the conduct of the District Attorney or his agents, because the appellant was not in custody.

■ The appellant was picked up at his residence at approximately 6:00 A.M. on July 31. He was allowed to sleep during the trip to Woodward, and was fed after the questioning ended at 3:30 P.M. Lastly, the facts that the appellant was not offered coffee when his interrogators had some; that he was questioned in a small room; and that his questioners sat in close proximity to him during the questioning do not convince us that the statement was not voluntarily made. We believe the statements were voluntary and properly admitted.

■ We also disagree with the appellant's contention that the trial court erred in failing to instruct the jury concerning the voluntariness of the statements. It is incumbent upon the trial court to instruct the jury concerning the voluntariness of a defendant's confession only if the defendant presents evidence to the jury that the confession or statement was coerced. *Holt v. State*, 506 P.2d 561 (Okl.Cr.1973). No such evidence was adduced, and the appellant did not request such an instruction. Thus, the trial court was under no duty to instruct the jury on the issue of voluntariness. *Holt*, supra.

■ The appellant's third allegation of error is that the prosecutor improperly inflamed the passions of the jury during closing argument. He cites numerous examples from the record to support his contention. This Court is convinced, however, from reading the comments complained of in the context in which they were made, that the appellant's contentions are without

nation. Nonetheless, the appellant was reminded of his constitutional rights after taking the polygraph. The trial court found that the statement made by the appellant subsequent to taking the test was not coerced by either the test itself or the investigator's comments concerning the results. We find no reason to disagree with that decision.

merit. Most of the arguments were proper inferences drawn from the evidence presented, or in response to argument and inferences made by defense counsel. See, *Battle v. State*, 478 P.2d 1005 (Okl.Cr.1970); *Brown v. State*, 563 P.2d 1182 (Okl.Cr.1977). The one instance in which the prosecutor openly referred to an expression of sympathy for the victims was stopped short by counsel's objection. The objection was sustained, and the prosecutor expressly stated to the jury that he would not ask them to base their verdict on sympathy. We find no impropriety warranting modification or reversal.

■ Lastly, in response to the appellant's argument that the trial court erred in ordering the appellant's sentences to run consecutively, we do not find the extenuating circumstances which prompted this Court to modify past cases to exist here.[3]

The judgments and sentences are AFFIRMED.

CORNISH and BRETT, JJ., concur.

**3.** The defendants' circumstances in *Morrow v. State*, 513 P.2d 880 (Okl.Cr.1973); *Manns v. State*, 513 P.2d 882 (Okl.Cr.1973); and *Graham v. State*, 549 P.2d 360 (Okl.Cr.1976) all evidenced extreme amounts of duress brought upon them by marital, familial and economic hardship, which, in part, prompted their crimes. Neither the crimes nor the appellant's circumstances are similar in the present case.