**Johnny Lee HARDEMAN, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–84–304.**

Court of Criminal Appeals of Oklahoma.

Sept. 24, 1987.

Rehearing Denied Oct. 16, 1987.

E. Alvin Schay, Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Presiding Judge:

Johnny Lee Hardeman, appellant, was tried by jury for the crime of First Degree Murder in Case No. CRF–82–457 in the District Court of Muskogee County. Appellant was represented by counsel. The jury returned a verdict of guilty and set punishment at life imprisonment. The trial judge sentenced appellant in accordance with the jury's verdict. From this judgment and sentence, appellant appeals to this Court.

Betty Jean Stanfill, a night dispatcher for Smith Ambulance, testified at trial that on December 4, 1982, she received a phone call at 1:41 a.m. The caller was a man, and he requested that an ambulance be sent to the curve near a high cliff, one or two miles from Taft. Ms. Stanfill notified the Highway Patrol, who in turn dispatched an EMS unit.

At approximately 2:00 a.m., the same evening, Ms. Stanfill received another call from the same man. He asked whether an ambulance was on the way. Upon relaying this information to the Highway Patrol, Ms. Stanfill was informed that more information would be needed before an ambulance or patrol unit would be sent out.

At 4:15 a.m., the man phoned again. This time he asked whether they had found anything. The man phoned again at 4:39 a.m., and told Ms. Stanfill to send an ambulance one and a half miles west of Taft. He stated that a woman had been shot and that she would die if an ambulance was not sent after her. Ms. Stanfill then dispatched an ambulance unit and again notified the Highway Patrol. Muskogee County Deputy Sheriff James Carney arrived at the location and discovered the body of Sheryl Bennett.

On December 3, 1982, Sheryl Bennett had accompanied her brother and father to a McClain High School basketball game. At trial, Sheryl's brother, Joseph Bennett, testified that the last time he saw his sister was when she was talking to her friend, John Morris. Joseph Bennett also testified that approximately a week before his sister's murder, he witnessed the appellant attacking his sister in the front yard of their home. He testified that he heard his sister scream, and that he ran outside and saw appellant and his sister rolling around fighting. Mr. Bennett stated that when he approached the couple, appellant ran away.

John Morris testified that on the night of December 3, 1982, he attended a basketball game at McClain High School. He testified that near the end of the game, he saw Ms. Bennett and they began talking. Mr. Morris testified that during their conversation, appellant approached Ms. Bennett, grabbed her by the arm and started walking away with her. As Mr. Morris tried to continue the conversation, appellant warned, "stay out of this shit."

At trial, Muskogee police detective Allen Simmons, Jr. testified that he had been investigating the murder of Sam Miller Morgan. He testified that Sheryl Bennett had telephoned him, and had asked to see him. Mr. Simmons testified that he visited with Ms. Bennett and that she informed him that appellant had murdered Mr. Morgan. She stated that appellant had told her that he had robbed Mr. Morgan and shot him when the men got into a fight. Ms. Bennett's willingness to testify against Mr. Hardeman became public information after a newspaper article appeared in the Muskogee Phoenix. After agreeing to testify for the State in that murder case, Ms. Bennett told Detective Simmons that she feared for her life if she testified against the appellant.

Mary Hardridge, appellant's sister, testified that on the evening of December 3, 1982, she talked to appellant about Sheryl Bennett's murder. Ms. Hardridge stated that when she informed her brother of the murder, he cried and was visibly upset. Ms. Hardridge denied ever having known that a warrant was out for the arrest of her brother. However, on rebuttal, Detective Simmons testified that he had personally told Ms. Hardridge that a warrant had been issued for her brother.

Appellant testified that he was home on the night of the murder and did not go to Tulsa. He insisted that Joseph Bennett and John Morris were misleading the jury.

█ In his first assignment of error, appellant contends that the trial court erred by refusing to excuse prospective juror Frances Stone for cause. During voir dire, Ms. Stone stated that she had bad feelings concerning a coal lease agreement in which one of defense counsel's associates had represented the other party. Specifically, appellant asserts that Ms. Stone could not be an impartial juror.

It is readily apparent from reading 22 O.S.1981, § 660 that the juror complained of did not fall into any of the categories which would have allowed her to be automatically dismissed for cause. Moreover, it has long been held by this Court that whether a juror should be excluded rests in

the sound discretion of the trial court, and unless such discretion is abused, there is no error. *Bias v. State*, 561 P.2d 523 (Okl.Cr. 1977), *cert. denied*, 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1977).

In the case at bar, we find that the trial court did not abuse its discretion. The trial court voir dired Ms. Stone very carefully. Ms. Stone stated that her past experience would not prevent her from being a fair and impartial juror to this defendant. She further declared that although she did not care for defense counsel's associates, she held no particular grudge against him. Furthermore, Ms. Stone stated that even if she did have bad feelings toward counsel, she would not hold them against the defendant. The juror repeatedly assured the trial court that she could be fair and impartial. Moreover, appellant was not prejudiced since juror Stone was excused through defense counsel's peremptory challenge. This assignment of error is without merit.

█ In his second assignment of error, appellant contends that there was insufficient evidence presented at trial to sustain his conviction for Murder in the First Degree. In *Smith v. State*, 674 P.2d 569 (Okl.Cr.1984), this Court held that circumstantial evidence need not exclude every hypothesis, nor must it negate every other possibility than guilt. This Court further stated that where there is competent evidence from which the jury could reasonably conclude the defendant was guilty of the crime charged against him, this Court will not interfere with the verdict, even though there is a conflict in the evidence from which different inferences may be drawn.

Furthermore, in *Spuehler v. State*, 709 P.2d 202 (Okl.Cr.1985), this Court stated that the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. Accordingly, viewing the evidence in the light most favorable to the prosecution, we conclude that there was sufficient evidence from which any rational trier of fact could have found the

essential elements of the crime charged beyond a reasonable doubt.

In appellant's final assignment of error, he asserts that the jury did not represent a fair and impartial cross section of the community because those jurors who could not impose the death penalty were removed for cause. Specifically, appellant complains that such a jury is conviction-prone, excludes identifiable groups and is improperly focused on the sentencing phase. This Court has rejected this argument numerous times. See *Devooght v. State,* 722 P.2d 705 (Okl.Cr.1986); *Van Woundenberg v. State,* 720 P.2d 328 (Okl.Cr.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986), and *Rushing v. State,* 676 P.2d 842 (Okl.Cr.1984). For the reasons stated therein, we find this assignment of error to be without merit.

The judgment and sentence is AFFIRMED.

BUSSEY and PARKS, JJ., concur.

