**David Wayne WOODRUFF, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–87–442.

Court of Criminal Appeals of Oklahoma.

Jan. 13, 1993.

Rehearing Denied March 17, 1993.

Chris Box, Oklahoma City, Trial Counsel and David Autry, Asst. Appellate Public Defender, Norman, for appellant.

Robert Macy, Dist. Atty., Lou Keel, Greg Ryan, Asst. Dist. Attys., Trial Counsel, and Robert H. Henry, Atty. Gen. of Oklahoma and Beverley Quarles Watts, Asst. Atty. Gen., Oklahoma City, Appellate Counsel for appellee.

## OPINION

LUMPKIN, Vice Presiding Judge:

Appellant David Wayne Woodruff was tried by jury and convicted of Murder in the First Degree (21 O.S.1981, § 701.7) and Robbery with a Dangerous Weapon, After Former Conviction of A Felony (21 O.S. 1981, § 801), Case No. CRF–87–397, in the District Court of Oklahoma County. The

jury found the existence of three aggravating circumstances and recommended punishment of death for the murder conviction and one thousand (1000) years imprisonment for the robbery conviction. The trial court sentenced accordingly. From this judgment and sentence Appellant has perfected this appeal.

Appellant and co-defendant John Romano were found guilty of the first degree murder of Roger Sarfaty. The decedent's body was discovered on October 16, 1985, in his apartment in Oklahoma City. The decedent had been beaten, strangled and stabbed. Further facts will be presented as necessary.

## I. JURY SELECTION ISSUES

Appellant contends that it was reversible error for the trial court to refuse to conduct a hearing as to whether jury foreman McDonald had knowledge of Appellant's involvement in the Lloyd Thompson murder[1] and whether this knowledge had been communicated to the jury. The record reveals that Mr. Eugene McDonald was one of the original twelve venirepersons called to service. The State's list of witnesses was belatedly read to the jury, preceding the eighth peremptory challenge to the panel. One of the venire stated that he recognized the name "Cheryl Moody" as that of a secretary at his place of employment. Although the prospective juror is not identified by name in the transcript, the Appellant states that it was Mr. McDonald. This is not disputed by the State. The following exchange then took place:

MR. KEEL: (Prosecutor) In the event she is called to testify in this case, is there anything about the relationship you have had from what you have known of Cheryl Moody, to this point, that you think would make it hard for you to be fair and listen to the testimony. In other words, because of you having known her, would you give her more or less weight her testimony than you would anybody else?

1. In January, 1987, Appellant and co-defendant Romano were convicted of the first degree murder of Lloyd Thompson and sentenced to death.

PROSPECTIVE JUROR: No, sir.

MR. KEEL: So you can be fair to both sides in this case in spite of that?

PROSPECTIVE JUROR: I believe so. (Vol. II, Tr. 193–194)

The defense did not question him further, did not challenge him for cause nor remove him with a peremptory challenge. At that time, Appellant and co-defendant Romano each had one (1) peremptory challenge remaining. Both challenges were waived. Mr. McDonald remained on the jury and was ultimately selected as foreman.

On the seventh day of trial, before closing arguments were to be given in the second stage, counsel for co-defendant Romano, joined by Appellant's counsel, asked that the jurors be individually questioned to determine whether during first stage deliberations they had learned of the defendants' connection with the Thompson murder. It was revealed that Cheryl Moody was the daughter of Lloyd Thompson.

The reason given by defense counsel for the motion was their opinion that the jury did not react appropriately to the State's reading of the bill of particulars and the mention of the convictions for the Thompson murder and the length of time during first stage deliberations.[2] The trial court denied the motion, stating that to grant it would violate the sanctity of the jury.

■ Appellant now argues in the alternative that failure to hold a hearing to determine whether Mr. McDonald communicated his knowledge to the other jurors was error, the failure to excuse McDonald from the jury was error, and that trial counsel was ineffective for failing to remove him from the jury. We disagree with Appellant's arguments and find no reason for reversal or modification. The record reflects that Mr. McDonald was competent to serve as a juror and that Appellant has failed to show that he was denied a fair

trial by Mr. McDonald's service on the jury. The question of the competency of jurors is addressed to the sound discretion of the trial court, and absent an abuse thereof, the finding of the trial court will not be upset on review. *Greathouse v. State,* 503 P.2d 239, 240 (Okl.Cr.1972).

During voir dire, Mr. McDonald clearly indicated that he understood that the defendants were presumed to be innocent of the charges against them; that the State has the burden of proof and if the State does not meet that burden of proving guilt beyond a reasonable doubt, that the defendants' must be found not guilty. He further indicated that he could keep an open mind and listen to all the evidence presented by both the State and the defense and that he knew of no reason why he could not be a fair juror. He assured defense counsel that he would hold the State to its burden of proof and make them prove each and every element, beyond a reasonable doubt, of the crimes charged against the defendants. Mr. McDonald indicated that he could follow the court's instructions as to the law, and that he was not prejudiced against the defendants. (Vol. I, Tr. 83, 154–155, 174)

■ By failing to exercise his last peremptory challenge, Appellant has waived whatever claim he may have had concerning the partiality or improper makeup of the jury. *See Greathouse,* 503 P.2d at 241. (wherein the trial judge refused to grant a mistrial after a juror indicated that he knew one of the State's witnesses. The conviction was affirmed based on the juror's indication that knowledge of the witness would not affect his partiality. We held that when defense counsel failed to inquire as to the knowledge of the witness by the juror, any error was waived.) *See also Hamilton v. State,* 79 Okl.Cr. 124, 152 P.2d 291, 295 (Okl.1944).

---

2. The record reflects that the jury began its first stage deliberations on May 22, 1987. Sometime before 6:30 p.m., the jury reported to the trial judge that it was split 6 to 6. The jury was then sent to dinner before resuming its deliberations. A verdict of guilty was returned that same day.

Comments by defense counsel indicate that the jury returned approximately five (5) hours after announcing their deadlock with a guilty verdict, while comments by the trial court indicate it was one hour.

██ However, due to the nature of Appellant's allegations, we will address the issue further. The jury trial system is founded on the impartiality of a body of peers selected by counsel. Voir dire is the procedure designed to give a criminal defendant the opportunity to explore the opinions and personal knowledge of potential jurors who may ultimately decide his fate. One of the purposes of voir dire is to ensure a criminal defendant's right to a fair and impartial jury. The critical fact to be determined is whether the defendant received a fair trial from jurors who could lay aside any personal opinions and base a verdict on the evidence.

In the present case, the trial court conducted an exhaustive voir dire. Those prospective jurors with preconceived opinions for or against Appellant, who could not set aside those opinions or who had doubts about their ability to be impartial, were excused. The remaining prospective jurors were questioned further as to their knowledge of persons involved in the case. Counsel for the State and for both defendants carefully questioned each prospective juror to make certain that each could and would set aside any emotion he or she might have concerning this case and depend solely on the evidence presented during trial to decide the outcome. As a result, we find that the defendants were left with twelve impartial jurors.

██ The mere fact that Mr. McDonald knew Lloyd Thompson's daughter does not render him incapable of serving on the jury. A criminal defendant is not entitled to jurors who know nothing about his case. *Hale v. State*, 750 P.2d 130, 134 (Okl.Cr. 1988), *cert. denied*, 488 U.S. 878, 109 S.Ct. 195, 102 L.Ed.2d 164 (1988); *Brecheen v. State*, 732 P.2d 889, 892 (Okl.Cr.1987), *cert. denied*, 485 U.S. 909, 108 S.Ct. 1085, 99 L.Ed.2d 244 (1988); *Wooldridge v. State*, 659 P.2d 943, 946 (Okl.Cr.1983). The constitutional guarantee of a fair and impartial trial does not exclude service by a juror with knowledge of facts and circumstances involving the case, but only those persons who use that knowledge to form opinions concerning the merits of the case, or who

form a negative opinion of the defendant based on that knowledge. *Smithey v. State*, 385 P.2d 920, 924 (Okl.Cr.1963).

██ Judge Saied's refusal to hold an evidentiary hearing to determine whether or not any improper information had been imparted to the other jurors was a proper determination. In order to establish juror misconduct, "a defendant must show actual prejudice from any alleged jury misconduct and defense counsel's mere speculation and surmise is insufficient upon which to cause reversal". *Chatham v. State*, 712 P.2d 69, 71 (Okl.Cr.1986). *See also Parsons v. State*, 603 P.2d 1144, 1146 (Okl.Cr.1979).

The record in the present case is absolutely barren of anything other than speculation or surmise by defense counsel. Judge Saied, an experienced trial judge, disputed defense counsel's observations on the record. He stated that he observed the jury during the reading of the bill of particulars. At the mention of the prior murder conviction, he noticed two jurors in particular who showed some surprise. He added that he did not think that Mr. McDonald knew of the murder conviction, but if he did, there was nothing to indicate that he had said anything about it to the other members of the jury. Regarding the length of the first stage jury deliberations, he did not find it unusual to have a jury deadlocked 6 to 6 and return a few hours later with a guilty verdict. He further commented:

> [i]f I did this I think I would be violating sanctity of the jury itself. They have deliberated and we have no right to go in and ask how they did it and why they did it. I have given them an admonition every time, a very strong one I think you all know.
>
> In fact I add to it more than was actually required by statute, and it has been a very strong admonition in my opinion. I can't invade the province of the jury and ask them his question..... (Vol. VII, Tr. 5)

██ Whether or not to hold an evidentiary hearing was within the discretion of the trial court. Finding no abuse of that discretion, we find no error.

Similarly, we do not find defense counsel's decision to leave Mr. McDonald on the jury indicative of ineffective assistance of counsel; in spite of a comment by the trial judge that he thought Mr. McDonald would be removed by the defense. Counsel admitted that the decision not to remove Mr. McDonald was a part of their trial strategy. In hindsight, it may appear to the Appellant that the strategy may not have been appropriate, but this is not sufficient to meet the test of ineffectiveness established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We have previously refused to evaluate the performance of trial counsel on hindsight. *Dunham v. State*, 762 P.2d 969, 975 (Okl.Cr.1988); *Smith v. State*, 650 P.2d 904, 908 (Okl.Cr.1982). Further, this court, through review of cases on appeal, is familiar with trial counsel for both defendants and find them to be experienced, capable capital litigators whose strategic choice to leave Mr. McDonald on the jury was well within the range of professionally reasonable judgment.

We find that Appellant was not prejudiced by counsel's decision as he has failed to show that there is a reasonable probability that the outcome of the case would have been different. Based upon the foregoing, we find that Appellant is not entitled relief due to the service of Mr. McDonald on the jury. Accordingly, this assignment of error is denied.

## II. GUILT–INNOCENCE ISSUES

In his first assignment of error, Appellant contends that the evidence presented at trial was insufficient to support the verdicts of guilt. He argues that the circumstantial nature of the evidence of both the murder and the robbery, at best, raised only suspicion and speculation of guilt.

Circumstantial evidence and the reasonable inferences drawn therefrom have the same probative effect as direct testimony. When the evidence against the defendant is wholly circumstantial, as in this case, the evidence and inferences therefrom must be considered in the light most favorable to the State and must be inconsistent with any reasonable hypothesis other than the defendant's guilt. *Greer v. State*, 763 P.2d 106, 107 (Okl.Cr.1988); *Smith v. State*, 695 P.2d 1360, 1362 (Okl. Cr.1985). The State is not required to exclude every conceivable hypothesis or negate any possibility other than guilt. *D.R.R. v. State*, 734 P.2d 310, 311 (Okl.Cr. 1987).

When an appellant contends that he was convicted upon insufficient evidence, this Court must consider and examine the entire record. *Lee v. State*, 661 P.2d 1345, 1354 (Okl.Cr.1983). While each co-defendant is entitled to have his case decided on the basis of the evidence against him, this does not require this Court to review the evidence in a vacuum. Where two or more defendants are charged with acting in concert, evidence against each is available against the others. *Cooper v. State*, 584 P.2d 234, 237 (Okl.Cr.1978).

The evidence presented by the State in the instant case showed that the decedent was a jewelry dealer who lived alone in an apartment at the May Ridge Apartment complex in Oklahoma City. The decedent kept large amounts of jewelry, both new and older tarnished pieces, in his apartment. The decedent was also known to wear jewelry, particularly rings on every finger. In his apartment the decedent kept large cardboard buckets of change, specifically quarters. He was a regular customer at the Celebrity Club, coming in every night at approximately 12:30 and remaining until the 2:00 a.m. closing. The decedent was last seen leaving the club on Saturday, October 12 at 2:00 a.m.

On October 16, 1985, the decedent was found murdered. He had been beaten, strangled and stabbed five (5) times. Testimony from medical witnesses indicated that he had been dead for approximately two to three days. A newspaper, dated October 12, 1985, was found opened in his apartment. Rolled, unopened newspapers, dated October 13, 14, and 15, 1985, were found outside the apartment. No buckets of change were found in the apartment nor

was any jewelry found on the decedent. A pair of slacks with the pockets pulled out was found draped over a door.

Co-defendant Romano was incarcerated at the Enid Community Treatment Center during October 1985. He regularly received leave passes from the Center, including a weekend pass for October 11 through 13, 1985, when he checked out to Oklahoma City. During October he had discussed with Tracy Gregg the robbery and murder of the decedent. Romano attempted to elicit Gregg's aid, but Gregg refused to participate. The decedent was found murdered a few days after this conversation.

On Saturday afternoon, October 12, 1985, Appellant and co-defendant Romano were together in a store in Quail Springs Mall. The two men were carrying cups of beer and appeared to be intoxicated. When they spilled the beer and vomited in the store, security was called to remove them. Appellant initially refused to leave, announcing that he wanted to purchase a television. He told the clerk that they did not need any credit, that they had money. He and Romano then emptied their pockets of quarters. The store clerk also testified that she saw what appeared to be a blood stain on the Appellant's pant leg. She said that Appellant showed her a small cut on his hand.

Eventually, the men cooperated with the security personnel and were removed from the store. The quarters, estimated to be between $15.00 and $30.00 worth, but not counted, were scooped up in Romano's baseball cap. Appellant and Romano were retained in a holding cell until they could be turned over to the Oklahoma City Police Department. A lock blade knife was removed from one of them.

Under a charge of disorderly conduct and public intoxication, the men were transferred to the Detox Center. All of their personal belongings were sent with them. Procedures for booking a person into the Detox Center were more relaxed than those used in the county jail. Although not directly removed from him, a knife and two pens were listed as property checked by

Romano. Both men refused to check any money or jewelry.

Denise Howe, Appellant's girlfriend, subsequently picked up Appellant and Romano at the Center. Under their direction, she drove them back to Quail Springs Mall to retrieve Appellant's car. She observed numerous small "diamond" papers (papers used to wrap diamonds and other small stones) surrounding the car. Ms. Howe testified that the following day she saw the Appellant with some gold jewelry she had not seen previously. She described the jewelry, a necklace and five or six rings, as looking old and tarnished. She said that Appellant did not have the money to purchase the jewelry. Appellant subsequently mailed the jewelry to a friend in California.

On October 16, 1985, at the residence shared with Ms. Howe, Appellant received a phone call from the Enid Community Treatment Center. He and Ms. Howe subsequently drove out to the May Ridge Apartments. The sight of numerous police cars made Appellant nervous and fidgety and the two turned around and drove home.

Denise Howe further testified to receiving a phone call from Appellant, after he had been taken into custody, to "clear out the house". In response to such request she removed pieces of rope, a watch and a pair of gloves. These items were later turned over to the police. A portion of the rope was tied in a fashion known as a garotte. The medical examiner testified that the width of the rope was consistent with the ligature marks found on the decedent.

■■■ This Court has held repeatedly that the jury is the exclusive judge of the weight of the evidence and the credibility of the witnesses testimony. *Hollan v. State*, 676 P.2d 861, 864 (Okl.Cr.1984); *Isom v. State*, 646 P.2d 1288, 1292 (Okl.Cr. 1982). Although there may be conflict in the testimony, if there is competent evidence to support the jury's finding, this Court will not disturb the verdict on appeal. *Enoch v. State*, 495 P.2d 411, 412 (Okl.Cr. 1972). A reviewing court must accept all reasons, inferences and credibility choices

that tend to support the verdict. *See Washington v. State*, 729 P.2d 509, 510 (Okl.Cr.1986).

Here the jury found sufficient evidence of guilt although Appellant thoroughly cross-examined the State's witnesses, successfully drawing attention to certain inconsistencies; placed before the jury names of several other persons who could have been responsible for the decedent's murder; and presented a witness who stated that he saw the decedent Sunday morning, the day after the State theorized the decedent was killed. In our review of the evidence, we find that sufficient evidence of guilt was presented to support the jury's findings and that such evidence satisfies the "reasonable hypothesis" test, demonstrating more than a suspicion of guilt. Therefore, we refuse to interfere with the jury's verdicts of guilt and this assignment of error is denied.

■■■ In his second assignment of error, Appellant contends that the evidence presented at the preliminary hearing was insufficient to demonstrate that probable cause existed to believe that he committed the offenses of murder and robbery with a dangerous weapon. It is well established that at the Preliminary Hearing the State must present sufficient evidence to prove that a crime was committed and sufficient cause to believe that the defendant committed that crime. *Matricia v. State*, 726 P.2d 900, 903 (Okl.Cr.1986); *Holloway v. State*, 602 P.2d 218, 219 (Okl.Cr.1978); *Neff v. State*, 39 Okl.Cr. 133, 264 P. 649 (1928); 22 O.S.1981, § 264; While there is always the presumption that the State will strengthen its case at trial, the evidence at preliminary hearing must coincide with guilt and be inconsistent with innocence. *State v. Weese*, 625 P.2d 118, 119 (Okl.Cr.1981). In the present case, with the exception of the testimony of three police officers, the evidence presented at the preliminary hearing was the same as that presented at trial. We have reviewed the preliminary hearing transcript and find that the State presented sufficient evidence from which the examining magistrate could find that the offenses of murder and robbery with a dangerous

weapon had been committed, and that there was sufficient cause to believe the defendant had committed those offenses.

■■■ Two pieces of rope retrieved from the home shared by Appellant and Denise Howe were introduced into evidence by the State. Appellant contends in his third assignment of error that this was reversible error as the State failed to show the relevance of the rope by connecting it to the crime. Appellant directs this Court's attention to *Morris v. State*, 603 P.2d 1157 (Okl. Cr.1979). In *Morris* we found that certain exhibits were introduced which did not place the defendant at the scene nor in any way indicate the defendant's guilt. We held that the admission of those exhibits "covered the defendant with an unwarranted veil of suspicion, and distracted the jury. For these reasons, they should have been excluded." 603 P.2d at 1159.

■■■ Contrary to Appellant's assertions, we do not find that the rope falls into the category of evidence described in *Morris*. The general rule regarding demonstrative evidence is that it is admissible if it is relevant and the probative value of the evidence outweighs the prejudicial effect. *Sheker v. State*, 644 P.2d 560, 562 (Okl.Cr. 1982), 12 O.S.1981, §§ 2402, 2403. Admission of a weapon in a murder case is proper "if significant evidence exists from which a reasonable inference can be drawn that the weapon was used by the defendant to commit the crime." *Pannell v. State*, 640 P.2d 568, 571 (Okl.Cr.1982). On appeal, the burden of establishing prejudice from the admission of incompetent evidence is upon the defendant. *Moser v. State*, 509 P.2d 184, 185 (Okl.Cr.1973).

■■■ In this case, the rope was received by the police from Denise Howe. She took the rope out of the closet shared with Appellant at his request to "clear out the house." One of the pieces of rope was tied in a garrotte. Testimony established that a rope tied in this manner could be used as a strangulation device. The rope was examined by the medical examiner and found to be consistent with the size and weight of rope which left the ligature marks on the decedent's body. The pattern of bruising

on the decedent's neck was particularly unique and probative of the manner in which the rope was used. The way in which the rope was tied was compatible with the type of bruising which resulted. This Court has long held that in order to be relevant, the evidence need not conclusively, even directly, establish the defendant's guilt. Any legal evidence from which the jury may adduce the guilt or innocence of the defendant is admissible if, when taken with other evidence in the case, it tends to establish a material fact in issue. *Ashlock v. State,* 669 P.2d 308, 310 (Okl.Cr.1983); *Fahay v. State,* 288 P.2d 757, 760 (Okl.Cr. 1955). See also, 12 O.S.1981, § 2401.

The rope was relevant to the case in allowing the jury to visualize one of the weapons used in the attack. We find that the State sufficiently connected the rope to the crime and to the Appellant to permit its proper introduction into evidence. Accordingly, this assignment of error is denied.

■■■ In his fourth assignment of error Appellant contends that the trial court erred when it allowed Detective Mullinex to give his opinion that the rope was tied in a garrotte and to demonstrate how it could be used as a weapon. The testimony was properly admitted under 12 O.S.1981, § 2702 as that of an expert. Under section 2702 expert opinion testimony is admissible if it is based upon specialized knowledge unavailable to the layman and if it will assist the trier of fact in making a decision.

Detective Mullinex was not originally assigned to Appellant's case but was the chief investigator by August 1986, when Denise Howe turned over the rope to the police. He subsequently submitted it to the forensics lab for analysis. His opinion that the rope was tied in a manner known as a garrotte and that a garrotte could be used as a strangulation device was based upon his personal knowledge. As a police officer he was certainly more familiar with the uses of a rope as a weapon than the general public. See *Farris v. State,* 670 P.2d 995, 997 (Okl.Cr.1983); *Harvell v. State,* 395 P.2d 331 (Okl.Cr.1964).

Further, the rope was a critical piece of evidence. The manner in which it was tied required an explanation. The opinion of Detective Mullinex was highly probative of the determination of whether or not the rope was used as a murder weapon. As such we find that the testimony met the requirements of Section 2702 and there was no error in admitting this testimony. *See Green v. State,* 713 P.2d 1032, 1039 (Okl.Cr.1985), *cert. denied,* 479 U.S. 871, 107 S.Ct. 241, 93 L.Ed.2d 165 (1986).

■■■ Detective Mullenix also demonstrated, over the objection of defense counsel, the use of the garrotte. It was placed around the neck of an Assistant District Attorney with the gap in the back where the two ropes were pulled together pointed out to the jury. Appellant argues it was error for the trial court to permit the demonstration.

Appellant compares this case to *Ford v. State,* 719 P.2d 457 (Okl.Cr.1986), and *Brewer v. State,* 650 P.2d 54 (Okl.Cr.1982). In *Ford* we condemned the prosecutor's conduct of demanding that the defendant pick up the gun used in the homicide and show the jury how it was used. While in *Brewer* we found the defendant was prejudiced during the prosecutor's cross-examination of the defendant's expert witness on insanity by stabbing a picture of the decedent with the knife allegedly used to commit the murder. In both cases the prosecutor's conduct was found to be prejudicial theatrics which went entirely outside the record and had no probative value.

We find that the demonstration in the present case does not compare to those cases cited by the Appellant. Rather, we find it similar to demonstrations discussed in two cases cited by the State. In *State v. Sutherland,* 24 Wash.App. 719, 604 P.2d 957 (1979), *rev'd.* on other grounds, 94 Wash.2d 527, 617 P.2d 1010 (1980), and *State v. Rich,* 395 A.2d 1123, 1131 (Me. 1978), demonstrations of weapons for illustrative purposes were upheld. Although the defendant was not placed in actual possession of the weapon used in either case, the demonstrations were found relevant and helpful to the jury. In *Sutherland* the evidence established that the defendant had purchased a .38 caliber Smith and Wes-

son revolver, a weapon which could produce the precise physical characteristics found on the bullets removed from the decedent and examined by the ballistics expert. The evidence also showed an absence of any record of the transfer of that weapon until the time of the decedent's death.

In *Rich* the evidence showed that the murder weapon was a pengun. The defendant owned and carried a pengun which he threw into the water off the wharf shortly after the murder took place. The exhibition of the pengun to the jury, similar to the one owned by the defendant and of a type unknown to the general public, was upheld as the unique physical makeup aided in explaining to the jury its construction and use.

In the present case, the rope was removed by Appellant's girlfriend, at his request, from a closet shared by the two. The physical characteristics of the rope were consistent with the marks left on the decedent's body. Contrary to Appellant's assertion, the general public is not familiar with the use of a garrotte or the process of strangulation. Because of the specific configuration in which the rope was tied, the demonstration was highly informative.

■ Further, we do not find the demonstration "grandstanding" as Appellant suggests, but an illustration of a use of the evidence which was helpful to the jury in deciding the issue before them. The brief demonstration was not so prejudicial as to outweigh the probative value of helping the jury understand how the rope could have been used. Appellant was able to thoroughly cross-examine Detective Mullenix as to his opinion and demonstration. Therefore, we find that the trial court did not abuse its discretion in permitting the demonstration. *See Palmer v. State*, 719 P.2d 1285, 1288 (Okl.Cr.1986). This assignment of error is denied.

■ In his fifth assignment of error Appellant asserts that the trial court infringed upon his constitutional rights to confront the witnesses against him and to present witnesses in his defense by preventing him from eliciting relevant evidence indicating the involvement of others in the crimes charged. During the course of the trial it became evident that the theory of defense was that of innocence and that someone other than the Appellant was responsible for the murder. Appellant's attempts to introduce evidence of the involvement of T.R. Ballard, Kathy Ford and Susan Babbitt were frequently met with objections by the State; objections which the trial court sustained. Questions concerning the relevancy of particular evidence are within the discretion of the trial court. *Fitchen v. State*, 738 P.2d 177, 180 (Okl.Cr.1987). A determination that the evidence should be excluded as irrelevant should be affirmed unless there is a clear showing of abuse accompanied by prejudice. *Klinekole v. State*, 705 P.2d 179, 184 (Okl.Cr.1985).

■ In *Quinn v. State*, 55 Okl.Cr. 116, 25 P.2d 711 (1933), this Court held that evidence offered to show that some other person committed the crime charged must connect such other person with the fact; that is some overt act on the part of another towards the commission of the crime itself. There must be evidence of acts or circumstances that tend clearly to point to another, rather than the accused. *See also Case v. State*, 555 P.2d 619, 623 (Okl.Cr. 1976). We addressed this issue again in *Tahdooahnippah v. State*, 610 P.2d 808, 810 (Okl.Cr.1980), and stated that it was not enough to show a possible motive on the part of another; the evidence must show an overt act by the third person toward the commission of a crime.

Appellant attempted to interject evidence that the decedent was involved with prostitutes, one of which was Susan Babbitt. Babbitt's name was brought up during the cross-examination of Detective Sealy. He testified that a Susan Babbitt was located but the police were unable to connect her with the Appellant, other than as an acquaintance from the Celebrity Club. Sealy stated that his investigation revealed that she was not the decedent's girlfriend and that no connection could be drawn between Ms. Babbitt and Kathy Ford.

Much of the evidence Appellant wanted to introduce about Kathy Ford came in either over the State's objection or with no objection from the State. Detective Sealy testified on cross-examination that the name Kathy Ford had come up in the investigation into the murder; however, they were not able to verify any actual person known to be Kathy Ford. An offer of proof was made by Appellant that, if permitted, Detective Sealy would testify that the name Kathy Ford came up several times as having possibly set the decedent up and robbed him.

During his case in chief, Appellant established that the decedent had last been seen by a neighbor arguing with a blonde headed woman. Evidence was also introduced to show that a knife had been sold to a person who gave her name as Kathy Ford. As with Susan Babbitt, none of the evidence presented or included in the offers of proof connected Ford with the commission of the murder.

Appellant was also able to place before the jury substantial evidence of T.R. Ballard. However, evidence that Ballard knew the decedent from frequenting the same pool hall, that Ballard was destitute before the decedent's death, but seen with cash and jewelry after the murder shows no overt act by him in the commission of the murder.

An offer of proof was made that Ballard's name was mentioned frequently in police reports. Defense counsel stated that, if permitted, Tom Farris would testify that Ballard and the decedent had business dealings and that the decedent had some problems with Ballard. When the court inquired into what the problems were and whether threats had been made, defense counsel did not answer the question posed but stated that the evidence was offered to show motive and opportunity.

It was also stated that a witness testified as to Ballard's having slapped the decedent at some point in time. The court sustained the State's objection and informed the defense that the evidence could come in during the testimony of the witness who made the statement. No such testimony was ever offered. Without that testimony or further evidence showing some act by Ballard in furtherance of the murder, we find the trial court properly ruled that further evidence was not relevant.

■ In his eighth assignment of error, Appellant contends that the trial court erred in allowing prosecution witness Vivian VanTreese to testify that Appellant had bloodstains on his pants. Ms. VanTreese, the clerk at the store in Quail Springs Mall, testified that she noticed stains that looked like blood on the Appellant's pants. When she asked him what the stains were, Appellant replied that he had been painting a house and cut himself on some glass. Ms. VanTreese then saw a cut on Appellant's hand between his thumb and forefinger. In a pretrial motion hearing, the trial court overruled Appellant's motion in limine in light of his opportunity to cross-examine the witness. In *Cherry v. State*, 518 P.2d 324, 328 (Okl.Cr.1974), we specifically authorized a trial court to allow a lay witness to "testify that certain marks, spots or discoloration observed by him were, in his opinion, bloodstains". This was also upheld in *Lee v. State*, 661 P.2d 1345, 1354 (Okl.Cr.1983).

In the present case we find the testimony was properly admitted as it was based on the witness's actual view of the stains and was relevant to the determination of the identity of the decedent's assailant. Contrary to Appellant's argument, we find the testimony more probative than prejudicial. Ms. VanTreese saw Appellant on October 12, the day of the decedent's death. The fact that Appellant may have had blood on his pants was certainly probative of what his activities may have been earlier in the day. The risk of any prejudice was decreased by Appellant's cross-examination of Ms. VanTreese. Accordingly, this assignment of error is denied.

■ Appellant asserts in his ninth assignment of error that the trial court erred in admitting prejudicial hearsay testimony from prosecution witness Jerry Jones. Mr. Jones testified to a conversation he had with co-defendant Romano on October 12, 1988 at an Oklahoma City pool hall. Appel-

lant specifically objects to testimony that it was common knowledge around the pool hall which Jones and Romano frequented that the decedent was murdered on a Saturday and that the body had been discovered on a Monday or Tuesday. Appellant's objection was overruled and Jones was permitted to testify further that the above information was common knowledge because the owner of the pool hall had an acquaintance who was a medical examiner. (Vol. III. Tr. 126–127)

Appellant argues that Jones' third hand information was clearly hearsay for which no exception exists and was not admissible for any purpose. We disagree. In *Williams v. State*, 542 P.2d 554 (Okl.Cr. 1975), *vacated on other grounds, Williams v. Oklahoma*, 428 U.S. 907, 96 S.Ct. 3218, 49 L.Ed.2d 1215 (1976) we stated:

> ... The clearest case of hearsay is where a witness testifies to the declaration of another for the purpose of proving the facts asserted by the declarant. The hearsay rule, however, does not operate, even apart from its exceptions, to render inadmissible every statement repeated by a witness as made by another person. It does not exclude evidence offered to prove the fact that a statement was made or a conversation was had, rather than the truth of what was said. Where the mere fact that a statement was made or a conversation was had is independently relevant, regardless of its truth or falsity, such evidence is admissible as a verbal act.... (Footnotes omitted)

542 P.2d at 574.

*See also Nunley v. State*, 660 P.2d 1052, 1055 (Okl.Cr.1983); *Garcia v. State*, 639 P.2d 88, 89 (Okl.Cr.1981); *Godwin v. State*, 625 P.2d 1262, 1265 (Okl.Cr.1981).

The information to which Jones testified was knowledge which he acquired as a result of a general conversation with co-defendant Romano and others at the pool hall about the death of Roger Sarfaty. The testimony was not offered to prove the truth of the matter asserted, that the decedent had in fact been killed on Saturday and that the body was not found until Tuesday. Rather, it was offered to show that those in the pool hall, including co-defendant Romano, had talked about Sarfaty's death. Therefore, as the testimony was not hearsay, Appellant's contention is denied.

Appellant alleges in his tenth assignment of error that he was denied a fair trial through prosecutorial misconduct. Appellant cites numerous comments during the first stage closing argument which for a variety of reasons, were improper. In our review of this allegation, we find that most of these comments were not preserved for appeal because of the failure to object. Therefore we have reviewed the comments for fundamental error only. *Fixico v. State*, 735 P.2d 580 (Okl.Cr.1987).

 Prosecutors are entitled to fully discuss the evidence from their standpoint, drawing all logical inferences and deductions arising from that evidence. *Holt v. State*, 628 P.2d 1170, 1171 (Okl.Cr.1981); *Glidewell v. State*, 626 P.2d 1351, 1352 (Okl.Cr.1980). In order for the remarks of the prosecuting attorney to constitute reversible error they must be flagrant and of such a nature as to be prejudicial to the defendant. *Collins v. State*, 758 P.2d 340, 341 (Okl.Cr.1988); *Wimberli v. State*, 536 P.2d 945, 952 (Okl.Cr.1975).

 We have reviewed the comments and are unable to conclude that the remarks were so prejudicial as to adversely affect the fundamental fairness and impartiality of the proceedings. *Harris v. State*, 777 P.2d 1359, 1362 (Okl.Cr.1989). The trial court sustained two of Appellant's objections. The comments yielding such a result allegedly went outside the record. In the first instance, the prosecutor stated that Mr. Ioui testified that he returned home on October 16, at approximately 4:30 a.m., to see the decedent arguing with a woman. The objection was sustained with the trial court admonishing the jury to rely on their own memory of the testimony.

In the second instance the prosecutor stated that blood was found on co-defendant Romano's knife. Sustaining the Appellant's objection, the trial court stated the witness testified that there was some

rust or something on the knife, that he did not know what it was. The jury was again admonished to rely on their own memory of the testimony given at trial.

When determining whether a prosecutor's closing remarks were outside the record and so prejudicial as to warrant a reversal, the error is to be considered in light of the evidence and whether the remarks can be said to have influenced the verdict against the appellant. *Thornton v. State*, 668 P.2d 344, 346 (Okl.Cr.1983). We have previously found that the court's sustaining of an objection was sufficient to cure any error which may have occurred. *See Shepard v. State*, 756 P.2d 597 (Okl.Cr. 1988). Similarly, we find that the trial court's ruling cured any error.

Appellant further contends that the prosecutor attempted to elicit sympathy for the victim in both first and second stage closing arguments. The first stage comments, in which the prosecutor addressed the brutal nature of the crime were based upon evidence presented at trial and were well within the bounds of permissible argument. During the second stage the prosecutor stated in part:

> Imagine the horror with respect to—if you want a better definition or example of someone showing utter indifference to the suffering of another, can you imagine how a cord tied around your neck and spending three minutes, can you imagine the horror that Roger Sarfaty must have gone through. (Vol. VI, Tr. 39)

These comments addressing the heinous, atrocious or cruel nature of the crime and the trauma suffered by the decedent prior to his death were reasonable inferences from the evidence and the interpretation thereof. We find these comments supported by and in proper argument of the evidence. Similar comments have been upheld in *Stouffer v. State*, 738 P.2d 1349 (Okl.Cr.1987), *on rehearing*, 742 P.2d 562 (Okl.Cr.1987), *cert. denied*, 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988); *Brewer v. State*, 718 P.2d 354, 364–365 (Okl.Cr. 1986), *cert. denied*, 479 U.S. 871, 107 S.Ct. 245, 93 L.Ed.2d 169 (1986); *Capps v. State*, 674 P.2d 554, 557 (Okl.Cr.1984).

During the second stage, the prosecutor is alleged to have appealed to societal alarm by his comment that "the return of a death verdict is similar to societies act of self-defense." (VII, Tr. 22). While we do not condone comments designed to raise societal alarm, we do not find this comment so grossly improper as to have affected Appellant's rights during the sentencing phase of trial. *See Moore v. State*, 736 P.2d 161, 167 (Okl.Cr.1987), *cert. denied*, 484 U.S. 873, 108 S.Ct. 212, 98 L.Ed.2d 163 (1988); *Welliver v. State*, 620 P.2d 438, 439 (Okl.Cr.1980).

Finally, Appellant asserts that the prosecutor sought to diminish the jury's sense of ultimate responsibility for a punishment verdict by alluding to the duties of the prosecutor and police. Near the end of the second portion of the closing argument, the prosecutor attempted to explain the role of a bill of particulars. Appellant's objection was sustained and the jury admonished to disregard the last statement. The prosecutor resumed his argument with reference to the prosecutors, police and investigators who worked on the case. Appellant objected before the prosecutor could explain what the aforementioned parties had to do with the case.

With Appellant's objection overruled, the prosecutor continued his argument by stating "When you sat upstairs Friday night till 11:00 after hours and evaluating evidence in this case, you were doing your duty. Everyone in this case has been placed where they are doing their responsibility, except the two people. That's David Wayne Woodruff and John Joseph Romano". These last remarks were not met with an objection by Appellant. (VI, Tr. 47–48)

The sentence to be imposed on a defendant is not to be based upon the amount of time and effort the prosecutors and police have put into the case. To give the jury such an impression is improper. However, we have reviewed the comments in the instant case, in the context they were made, and do not find that they in any way misled the jury in an attempt to insulate

them from their decision or diminished their responsibility in determining the appropriate punishment. The comments are similar to those upheld in *Lawson v. State*, 739 P.2d 1006, 1008 (Okl.Cr.1987), and *Moore v. State*, 736 P.2d at 167, reminding the jury of their responsibility as jurors.

Finally, Appellant complains about comments referring to his lack of remorse. In *Smith v. State*, 727 P.2d 1366, 1374 (Okl. Cr.1986), we held that a discussion of evidence of lack of remorse is a proper subject for comment during closing argument of second stage. In *Nobles v. State*, 668 P.2d 1139, 1142 (Okl.Cr.1983), citing to *Sands v. State*, 542 P.2d 209 (Okl.Cr.1975), we stated that the determination of whether or not conduct or remarks of counsel will serve as a basis for reversal is contingent upon the effect which said remarks have on the rights of the defendant. "[A] criminal conviction is not to be lightly overturned on the basis of prosecutorial comment standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determine whether the prosecutor's conduct affected the fairness of the trial." *Guance v. State*, 751 P.2d 1074, 1077 (Okl.Cr.1988), citing *United States v. Young*, 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985).

We have thoroughly reviewed the alleged improper comments during both stages of trial and find no error warranting reversal or modification. The comments, both singly and combined, were not so improper as to deny the Appellant a fair trial. Accordingly, this assignment of error is denied.

### III. ISSUES RELATING TO COL-LATERAL ESTOPPEL AND DOUBLE JEOPARDY

At the time the present case was brought to trial, Appellant and co-defendant Romano had been previously tried by jury and convicted of the murder of Lloyd Thompson. During the Thompson trial, the State presented evidence of the Sarfaty homicide during the second stage to support the aggravating circumstance that the defendants constituted a continuing threat to society. Appellant contends in his seventh assignment of error that by presenting evidence of Sarfaty's murder during the Thompson trial, the State was collaterally estopped from bringing the instant prosecution.

In *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), the Supreme Court stated that collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuits". 397 U.S. at 1194, 90 S.Ct. at 444. The Court held that collateral estoppel was not only a requirement of due process, but was a part of the Fifth Amendment's guarantee against double jeopardy. The Double Jeopardy prohibition constitutionally guaranteed by the Fifth Amendment to the United States Constitution and Article 2, § 20 of the Oklahoma Constitution applies only to an individual's right not to be placed twice in jeopardy for the same offense. The doctrine of collateral estoppel, adopted by the Court in *Ashe*, is broader and applies to the adjudication by a trier of fact that the accused was not the person who committed the acts comprising the charged offense or that the accused had not committed an essential element of the separate and distinct offense of which he is subsequently charged. The foundational question which must be answered in determining the applicability of collateral estoppel is whether there has been a prior adjudication by a trier of fact which in effect acquits the accused of the current specific charged offense or an essential element of that separate and distinct offense.

In support of his argument, Appellant relies on *Chaney v. State*, 612 P.2d 269 (Okl.Cr.1980). In *Chaney* the defendant was charged separately with the kidnapping and murder of Kendal Ashmore and Kathy Brown. The State filed separate informations for each offense and chose to conduct separate trials. The defendant's motion to consolidate the charges for trial was overruled. During both the first and second stages of trial for Ashmore's murder, the State introduced evidence of

Brown's murder. This Court found the trial court's ruling error, determining that it would have been better to have joined the charges in a single information, listing separate counts. The State was consequently estopped from prosecuting the defendant for the murder of Brown.

We do not find Appellant's reliance on *Chaney* persuasive as the doctrine of collateral estoppel was applied improperly. A review of the opinion shows that it neither discusses whether the estoppel is based on state or federal law nor provides any authority for the application of the doctrine to the facts of the case. The opinion merely states that estoppel applies because the offenses could have been joined.

Title 22 O.S.1981, § 436–439 provide that the joinder of offenses and defendants for trial is permissive. *Chaney* would be a reliable result only if the joinder of offenses for trial was mandatory. While we recognize that it may be more efficient to join multiple charges for trial as in *Chaney*, such procedure is not mandatory. Further, in *Chaney* the defendant had not been adjudicated as to Ms. Brown's murder at the time that evidence was used at the trial for Ms. Ashmore's murder. To have properly applied collateral estoppel, the defendant would have had to have been acquitted of the Brown murder or any essential element of that murder at the time the evidence was introduced during the trial for Ashmore's murder. The jury in the instant case was not asked to determine the defendant's guilt or innocence of the Sarfaty homicide. *See Ellis v. State*, 834 P.2d 985 (Okl.Cr.1992); *White v. State*, 821 P.2d 378 (Okl.Cr.1991) (Lumpkin, J., concurring in results).

Appellant attempts to contrast the present case with *Johnson v. District Court of Oklahoma County*, 653 P.2d 215 (Okl.Cr. 1982), wherein the appellant asserted that the use of other crimes evidence during the second stage was a violation of the prohibition against double jeopardy. During the second stage of Malcolm Rent Johnson's capital trial the State presented the testimony of five elderly women, two of whom testified that the defendant had beaten and raped them; three others testifying to attempted rape, burglary and assault. This evidence was presented to support the aggravating circumstance that the defendant constituted a continuing threat to society. We held that "the evidence of aggravating circumstances at the sentencing stage in a capital case does not establish an independent crime." 653 P.2d at 219.

In attempting to distinguish *Johnson*, Appellant emphasizes that his argument in the present case is not one of double jeopardy. He asserts that the State was able to file the murder charges in a single information and its failure to do so, combined with the presentation of evidence at the Thompson trial, barred future prosecutions under the rule of collateral estoppel. Whether or not the State could have filed the murder charges in a single information is not determinative of the collateral estoppel issue in light of our permissive joinder statutes and as such a decision is not a final decision on an issue of ultimate fact. The proper characterization of the issue is provided by the State when it directs us to *Buckaloo v. State*, 650 P.2d 885 (Okl.Cr. 1982).

In *Buckaloo* the State sought to enhance the defendant's punishment for second degree burglary with three prior felony convictions. The jury declined to find the defendant guilty of the former convictions. Subsequently, the defendant was charged and tried for first degree robbery. At the robbery trial, the State again sought to enhance punishment with the same three felony convictions used in the prior trial. The defendant argued that the previous jury's refusal to find him guilty of the former convictions estopped the State from using the same three convictions for enhancement purposes in all subsequent prosecutions.

We disagreed with the defendant's argument stating that the determination of punishment in one case, using the facts of another case, is not a decision of ultimate fact in the cases used for enhancement. Quoting *Jordon v. State*, 327 P.2d 712 (Okl. Cr.1958), we said that providing enhanced punishment for second and subsequent of-

fenses does not create or define a new or independent crime, but describes circumstances where one found guilty of a specific crime may be more severely penalized because of his previous conviction. 650 P.2d at 887.

Based upon the foregoing, we find the prosecution of Appellant for the murder of Roger Sarfaty was not prohibited under the doctrine of collateral estoppel. The jury's consideration of the evidence of Sarfaty's murder during the second stage of the Thompson trial was not a final decision on the ultimate issue of Appellant's guilt or innocence of Sarfaty's murder. As we stated in *Johnson*, "To find otherwise, would abrogate the legislative intent to hold a defendant responsible for his separate and distinct acts of criminal misconduct." 653 P.2d at 219.

■ In his eleventh assignment of error Appellant asserts that the jury's finding of the aggravating circumstances of "continuing threat" and "prior violent felony" must be set aside as such a finding is barred by the prohibition against double jeopardy. Specifically, Appellant's argument is that because the same evidence was used to support these two particular aggravating circumstances in the Thompson murder trial and were rejected by the jury, the State is prohibited under double jeopardy principles, from presenting the same evidence in support of the same aggravating circumstances in the present case. We disagree.

We again refer to *Johnson* wherein we stated:

The death penalty statute authorizes the imposition of the death penalty where the State proves beyond a reasonable doubt the existence of one or more aggravating circumstances, which outweigh any mitigating circumstances. The punishment is solely imposed for the crime of murder in the first degree. The fact that other unrelated offenses or prior convictions are used to prove the aggravating circumstances cannot be held to have resulted in punishing the defendant a second time for he 'same offense'. (citation omitted)

Furthermore, during the sentencing stage of a capital case, the court or jury may consider relevant evidence that might not otherwise be admissible at trial, i.e., evidence of other crimes, and prior convictions. There must be due process limitations on the introduction of this evidence during the sentencing stage. However, the consideration of this evidence does not constitute double jeopardy. The defendant is not being punished a second time for the same offense; instead, the evidence is used to establish the defendant's character and criminal propensities which may justify the imposition of the death penalty. 653 P.2d at 218–219.

Accordingly, the consideration of the two aggravating circumstances during the Thompson murder trial did not preclude the jury's consideration, under the principles of double jeopardy, of the same aggravating circumstances in the present case. This assignment of error is therefore denied.

## IV. ISSUES RELATING TO PUNISHMENT

During the second stage of trial, the State sought to prove three aggravating circumstances; 1) the defendant was previously convicted of a felony involving the use or threat of violence to the person; 2) the murder was especially, heinous, atrocious or cruel; and 3) the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. Evidence of the Thompson murder was introduced to support the third of these aggravating circumstances while the judgment and sentence and the docket sheet were admitted to support the first aggravator listed. In his twelfth assignment of error, Appellant contends that the trial court erred in admitting any evidence of his prior conviction for the Thompson murder as it was not a final conviction and was then pending on appeal.

■ Evidence presented by the State to prove "continuing threat" consisted of testimony by Thompson's neighbor concerning her observations the day of the homicide,

the autopsy report reflecting the pathological diagnoses of the victim and photographs and fingerprints showing that the defendant in that case was in fact the Appellant. The fact that the conviction was not final does not affect the admissibility of the evidence relating to that offense. In *Johnson v. State,* 665 P.2d 815, 822 (Okl.Cr.1982), this Court held:

Evidence of a defendant's criminal record, or prior unadjudicated acts of violent conduct is relevant to the determination of whether the defendant is likely to commit future acts of violence that would constitute a continuing threat to society.... It is not necessary there be a final conviction for an unrelated criminal offense to be admissible at the sentencing stage.

See also *VanWoundenberg v. State,* 720 P.2d 328, 337 (Okl.Cr.1986), *cert. denied,* 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986).

Our decision is not altered by the fact that Appellant's conviction for the Thompson homicide has been reversed and remanded for a new trial. See *Woodruff v. State,* 825 P.2d 273 (Okl.Cr.1992). As the case was not reversed on the basis of insufficient evidence of guilt, the facts of the Thompson homicide remain relevant evidence which the jury in the instant case should consider in determining the appropriateness of the death sentence.

■ However, the same cannot be said of the judgment and sentence and docket sheet from the Thompson case. This evidence was admitted to show that a prior conviction had been obtained and that it was not final but on appeal. As that prior conviction has fallen, the judgment and sentence is no longer proper support for the "prior violent felony" aggravating circumstance. This does not necessitate a striking of the entire aggravator though, as this evidence was merely cumulative. Appellant's stipulations to prior convictions for two (2) counts of Solicitation to Commit Murder, that the convictions were final and that the crime involved the use or threat of violence was sufficient evidence in itself to support the "prior violent felony" aggravating circumstance.

■ The judgment and sentence from the Thompson case reflected the fact that Appellant had been sentenced to the death for the murder of Lloyd Thompson. We must next determine what effect, if any, this information had upon the jury. Appellant argues that conveying this information to the jury undermined the reliability of the death sentence imposed in the instant case.

■ The jury has the prime responsibility for deciding whether the death penalty should be imposed. We must be cautious to avoid any actions or directions which would tend to reduce the jurors' sense of responsibility for their decision. Knowledge that the defendant had received a death sentence for another murder could diminish the jury's sense of importance of its role and mitigate the consequences of their decision. However, when the jury is properly instructed as to its role and responsibility in making such a determination we cannot, on appellate review, conclude that the jury in any way shifted the responsibility for their decision or considered their decision any less significant than they would otherwise.

In the present case, the importance of the jury's role at sentencing is evident from the instructions. The jury was instructed that it had the responsibility for determining whether the death penalty should be imposed. They were informed of their role as factfinders, that the weight and value of testimony and evidence was for them to determine, that they should not surrender their own judgment to that of any witness or item of evidence, and of their duty to follow the law in reaching their conclusion. It was never conveyed or intimated in any way, by the court or the attorneys, that the jury could shift its responsibility in sentencing or that its role in any way had been minimized. The instructions given to the jury provided sufficient guidance as to how their judgment should be exercised. In this light, it is highly unlikely that the jury's sense of responsibility would have been diminished based

upon knowledge of the prior imposition of the death sentence.

The "qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination." *California v. Ramos,* 463 U.S. 992, 998, 998–999, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983). Reviewing the sentencing determination in the present case under this heightened standard, but also with a presumption of correctness, we find no reason to question the jury's conclusion. While evidence of the imposition of the death penalty by another jury is not relevant in determining the appropriateness of the death sentence for the instant offense, the facts of this case reveal that the admission of this evidence did not so infect the sentencing determination with unfairness as to make the determination to impose the death penalty a denial of due process. See *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985) (Rehnquist, J., dissenting)

 In a related assignment of error, Appellant contends that admitting evidence of the Thompson murder, over his objections and offer to stipulate to the conviction, to prove "continuing threat" violated the provisions of *Brewer v. State,* 650 P.2d 54 (Okl.Cr.1982). Appellant argues that under *Brewer* the defense must be allowed to stipulate that a previous conviction involving the use or threat of violence to prevent the prosecution from introducing testimonial or other evidence with regard to this aggravating circumstance, therefore the State should not be allowed to circumvent this by introducing evidence concerning the offense and conviction to support another aggravating circumstance.

In *Brewer* this Court held that in all capital cases wherein the State has alleged the existence of the aggravating circumstance that the defendant was previously convicted of a felony involving the use or threat of violence to the person, the defendant must be given the opportunity to personally stipulate that the prior felony conviction alleged did involve the use or threat of violence to the person. If the defendant stipulates, the State's proof of the aggravating circumstance must be limited to introduction of the judgment and sentence of the prior conviction. *Brewer* specifically addresses proof of the "prior violent felony" aggravating circumstance. Its principles have not been extended to cases involving proof of other aggravating circumstances.

Permitting the State to introduce evidence as to the underlying facts of the prior felony conviction in order to prove the "continuing threat" aggravating circumstance does not violate *Brewer.* Relying on bare stipulations could result in erroneous findings as to both aggravating circumstances. As discussed in *Brewer,* relying on mere stipulations may not adequately prove the violence element required for a finding of "prior violent felony". Further, in *Smith v. State,* 819 P.2d 270, 277 (Okl. Cr.1991), it was found that relying on stipulations as to the use of violence may not adequately demonstrate "continuing threat". The failure of the State to prove the aggravating circumstances alleged could result in an unconstitutional shift in the burden of proof to the defendant to disprove the State's allegations. As stated in *Smith,* these are the very reasons that when the State alleges that a defendant's conduct demonstrates one of the aggravating circumstances listed in 21 O.S.1981, § 701.12, the State must not only be permitted, but required to present evidence that the defendant's conduct supports the aggravator alleged. To hold otherwise would be to prevent the jury from hearing evidence relevant to a determination of the aggravating circumstance. This would "render meaningless the need to 'channel the sentencer's discretion by 'clear and objective standards' that provide 'specific and detailed guidance,' and that 'make rationally reviewable the process for imposing a sentence of death' ". *Smith,* 819 P.2d at 277. (citations omitted).

Here Appellant stipulated to the prior conviction for the Thompson murder but refused to stipulate that it involved the use of violence. The trial court then limited the evidence presented by the State to only

enough to show that it involved the use or threat of violence to the person. Based upon the foregoing discussion, we find no error in the admission of the facts of the Thompson murder to prove the "continuing threat" aggravating circumstance.

■ Appellant further argues that the two aggravating circumstances of "prior violent felony" and "continuing threat" are "duplicative". In *Green v. State*, 713 P.2d 1032 (Okl.Cr.1985), we addressed the duplication or doubling of aggravating circumstances. Adopting the reasoning of the Supreme Court of Florida in *Delap v. State*, 440 So.2d 1242 (Fla.1983), we found that aggravating circumstances are only duplicative when they cover the same aspect of the defendant's criminal history. *See also Smith*, 819 P.2d at 278.

The problem of duplication or overlapping of aggravating circumstances occurs when the factual elements of each aggravator are reviewed and summed up without considering the defendant's motive during each act. The presentation of Appellant's past history of criminal behavior (the prior convictions for solicitation to commit murder) to prove the "prior violent felony" aggravating circumstance and the presentation of Appellant's propensity for committing future harm (evidence of the Thompson homicide) to prove "continuing threat" address separate and distinct aspects of Appellant's conduct and provide multiple reasons to impose the death penalty. This situation is distinguishable from cases in which multiple aggravators generally describe the same behavior and impose a more severe penalty for exactly the same reasons.

■ In his thirteenth assignment of error, Appellant contends that his death sentence should be modified to life imprisonment because at the time of Roger Sarfaty's murder, the aggravating circumstance "especially heinous, atrocious or cruel" was unconstitutionally vague. Roger Sarfaty was found murdered on October 16, 1985. In its 1988 decision of *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), the United States Supreme Court held that the aggravating circumstance of "especially heinous, atrocious or cruel" was constitutionally invalid as applied in that case because 1) the jury was not guided by language sufficient to bridle its discretion and 2) this Court did not cure any unbridled jury discretion by narrowing the application of the aggravating circumstance. 486 U.S. at 363–365, 108 S.Ct. at 1859.

This Court narrowed the interpretation of that particular aggravating circumstance in *Stouffer v. State*, 742 P.2d at 563 to apply to instances of death preceded by torture or serious physical abuse. The judicially restricted interpretation was applied to a murder committed in 1985. In *Foster v. State*, 779 P.2d 591 (Okl.Cr.1989), we recognized that the problems underlying the reversal of Cartwright's death sentence stems from the fact that the jury was given incomplete instructions. The instructions did not address the limiting factors previously adopted and mandated by this Court for use with the aggravating circumstance "especially heinous or cruel".

The jury instruction given in the present case, both paragraphs of Oklahoma Uniform Jury Instructions—Criminal No. 436, embodies the limitations which the sentencer must consider in the application and finding of this particular aggravating circumstance. We have reexamined these principles on several occasions and have since consistently applied the narrow construction discussed above. *See Boltz v. State*, 806 P.2d 1117 (Okl.Cr.1991); *Moore v. State*, 788 P.2d 387, 401–402 (Okl.Cr. 1990); *Fox v. State*, 779 P.2d 562, 576 (Okl.Cr.1989), *Fowler v. State*, 779 P.2d 580, 588 (Okl.Cr.1989), *Nguyen v. State*, 769 P.2d 167, 174 (Okl.Cr.1988), *Rojem v. State*, 753 P.2d 359 (Okl.Cr.1988); *Hale v. State*, 750 P.2d at 142; *Mann v. State*, 749 P.2d 1151, 1160 (Okl.Cr.1988). Accordingly, we find that this particular aggravating circumstance was applied in a constitutional manner in the present case.

■ Appellant contends in his fourteenth assignment of error that the State failed to prove beyond a reasonable doubt the murder was especially heinous, atrocious or cruel. Appellant argues that this

particular aggravating circumstance must fall pursuant to our decision in *Brown v. State*, 753 P.2d 908 (Okl.Cr.1988), as the medical examiner was unable to state which of two potentially fatal wounds, the strangulation or stabbing, was inflicted first.

 The evidence supporting a finding that the murder was especially heinous, atrocious or cruel requires proof that the death was preceded by torture or serious physical abuse. *Id.* Doctor Chai Choi, a forensic pathologist with the Office of the Chief Medical Examiner, testified that bruises and abrasions to the decedent's knees and elbows suggested that a struggle had taken place prior to the murder. Ligature marks on the decedent's wrists and ankles indicated that he had been forcefully restrained with his wrists and ankles bound. Injuries to the decedent's head showed that he had been struck approximately five times with a long blunt object, producing wounds consistent with those created by a baseball bat. She further testified that the cause of death was strangulation, a death which occurred only after three to five minutes of slow suffocation. Dr. Choi also testified that the decedent suffered five (5) stab wounds, two (2) of which were potentially fatal.

In *Brown* we found insufficient evidence to support a finding that the murder was heinous, atrocious, or cruel as the medical examiner could not state which of the seven gunshot wounds was the fatal wound. This is clearly distinguishable from the present case wherein Dr. Choi testified that the injuries received by the decedent indicated that the strangulation preceded the stabbing. Although some of the bruising and lacerations to the arms and head occurred after the decedent's death, she unequivocally stated that the cause of death was suffocation caused by the strangulation.

 When the sufficiency of the evidence of an aggravating circumstance is challenged on appeal, the proper test is whether there was any competent evidence to support the State's charge that the aggravating circumstance existed. In making this determination, this Court should view the evidence in the light most favorable to the State. *Brogie v. State*, 695 P.2d 538, 542 (Okl.Cr.1985), *modified on other grounds*, 760 P.2d 1316 (Okl.Cr. 1988).

When the evidence is considered in this light, we find it was clearly sufficient. Evidence that the decedent struggled with his assailants, was beaten with a blunt instrument several times and ultimately died of strangulation was sufficient to establish the requisite torture or serious physical abuse necessary to sustain the aggravating circumstance that the murder was heinous, atrocious or cruel. In making this determination, we have specifically excluded the stab wounds inflicted post-mortem. Accordingly, we find that Roger Sarfaty's murder was especially heinous, atrocious or cruel and that the jury's finding of this particular aggravating circumstance was based on substantial uncontradicted evidence.

 Appellant also argues that the jury was prevented from considering the first stage testimony of the medical examiner pursuant to Instruction No. 19. That instruction told the jury "In arriving at your determination as to what sentence is appropriate under the law, you are authorized to consider only the evidence received here in open court presented by the State and the Defendant during the sentencing phase of this proceeding." (O.R. 235)

The record reflects that upon the State's motion, made prior to resting from the presentation of its second stage case in chief, all the testimony which was given in the first stage of trial was incorporated by reference into the second stage. (Vol. VI, 62) Therefore, the medical examiner's testimony was properly before the jury for their consideration in the sentencing phase of trial. *cf. Wilson v. State*, 756 P.2d 1240 (Okl.Cr.1988).

 In his fifteenth assignment of error Appellant challenges the application of the aggravating circumstance of "continuing threat". Appellant alleges that the circumstance is not properly defined and re-

**1148**

fers to it as the "standardless catch-all" aggravating circumstance." Initially, we must note that Appellant failed to request any additional definitional language be given to the jury. The only instructions requested by either defendant during the second stage were those concerning mitigating circumstances raised by co-defendant Romano. Having failed to properly preserve this error for appellate review, we will review for fundamental error only. *Liles v. State*, 702 P.2d 1025, 1031 (Okl.Cr. 1985), *cert. denied*, 476 U.S. 1164, 106 S.Ct. 2291, 90 L.Ed.2d 732 (1986).

We have previously upheld this aggravating circumstance finding it specific, not vague, and readily understandable. *Boltz*, 806 P.2d at 1125; *Munson v. State*, 758 P.2d 324 (Okl.Cr.1988) *cert. denied*, 488 U.S. 1019, 109 S.Ct. 820, 102 L.Ed.2d 809 (1989); *Liles*, 702 P.2d at 1031; *VanWoundenberg v. State*, 720 P.2d at 336. We are not now persuaded to alter that position. Accordingly, this assignment of error is denied.

Appellant alleges in his sixteenth assignment of error that the evidence was insufficient to support the aggravating circumstances of "continuing threat" and "previous conviction for a felony involving use or threat of violence". As previously discussed, Appellant's stipulations to his prior convictions for Solicitation to Commit Murder were sufficient to establish the aggravating circumstance of "prior violent felony". *See Smith v. State*, 737 P.2d 1206, 1214 (Okl.Cr.1987), *cert. denied*, 484 U.S. 959, 108 S.Ct. 358, 98 L.Ed.2d 383 (1987).

As for continuing threat, evidence of Appellant's participation in the Thompson murder and the callous nature in which Appellant participated in the murder of Roger Sarfaty support the jury's finding that there is a probability that Appellant would commit future acts of violence which would be a continuing threat to society. *Williamson v. State*, 812 P.2d 384 (Okl.Cr. 1991); *Robison v. State*, 677 P.2d 1080 (Okl.Cr.1984), *cert. denied*, 467 U.S. 1246, 104 S.Ct. 3524, 82 L.Ed.2d 831 (1984).

In his next four allegations of error Appellant challenges the second stage jury instructions. Appellant initially contends that instructions informing the jury that consideration of mitigating circumstances was entirely discretionary with them allowed the jury the option of ignoring mitigating evidence. Appellant argues that the instructions mirrored those condemned in *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988).

In *Mills* the Supreme Court held that in a capital case, the sentencer may not be precluded from considering, as a mitigating factor, any relevant circumstance, including any aspect of the defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death. This holding was based upon the Maryland capital sentencing scheme which provided that if the sentencer finds that any mitigating circumstances have been proved to exist, it then proceeds to decide whether those mitigating circumstances outweigh the aggravating circumstances and sentences the defendant to death. In making the determination as to the existence of a mitigating circumstance, the jury must unanimously agree as to that circumstance. A jury in Maryland that does not unanimously agree on the existence of any mitigating circumstance may not give mitigating evidence any effect whatsoever, and must impose the sentence of death.

Under the Oklahoma capital sentencing statutes the jury can only recommend a death sentence upon a unanimous finding of the existence beyond a reasonable doubt of one or more aggravating circumstance or circumstances, and upon a unanimous finding that any such aggravating circumstance or circumstances outweighed the finding of mitigating circumstances. 21 O.S.Supp.1987, § 701.11. The jury in the present case was so instructed in Instructions No. 6 which listed three (3) aggravating circumstances the State sought to prove against the Appellant and Instructions No. 7, 8, 12, and 14.

The jury was also instructed as to the consideration to be given mitigating evidence. Instruction No. 9 provided:

Mitigating circumstances are those which, in fairness and mercy, may be considered as extenuating or reducing the degree of moral culpability blame. The determination of what are mitigating circumstances is for you as jurors to resolve under the facts and circumstances of this case. (O.R. 225)

In Instruction No. 11 the jury was informed that evidence had been offered as to nine (9) particular mitigating factors. They were told that "[w]hether these circumstances existed, and whether these circumstances are mitigating, must be decided by you." (O.R. 227)

Clearly, our procedure for returning of a death sentence is quite different from that of the state of Maryland. The procedure and instructions implemented in the present case do not direct the jury to disregard any mitigating evidence. Rather, the instructions provide the fullest possible latitude for the consideration of evidence in mitigation. The jury was not prohibited in any way from considering any and all relevant mitigating evidence. *See Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). As the instructions given adequately apprised the jury of the method by which it should determine the sentence against the defendant, this assignment of error is denied.

■■■■ Appellant next contends that the trial court failed to properly instruct the jury concerning the burden of proof and the manner in which to weigh the aggravating circumstances and mitigating evidence. Specific standards for balancing aggravating and mitigating circumstances are not constitutionally required. *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). *See also Walker v. State,* 723 P.2d 273, 284 (Okl.Cr.1986); *Brogie v. State,* 695 P.2d at 544. The instructions given to the jury properly advised them to weigh the aggravating circumstances against the mitigating evidence. Instructions No. 8 through 12 comprehensively informed the jury that a find-

ing of the aggravating circumstances beyond a reasonable doubt is not by itself enough to assess the death penalty. Rather, the aggravating circumstances must clearly outweigh the mitigating, or death may not be imposed. Similar instructions have passed constitutional muster. *See Davis v. State,* 665 P.2d 1186, 1202 (Okl.Cr. 1983).

■■■■ Further, the trial court properly denied Appellant's requested instruction which placed a "beyond a reasonable doubt" standard on the ultimate life or death determination. In *Johnson v. State,* 731 P.2d 993 (Okl.Cr.1987), we held that the burden of proof analysis is not strictly applicable to the weighing process. Quoting to *Daniels v. State,* 453 N.E.2d 160 (Ind. 1983), we stated that while the State must prove beyond a reasonable doubt the existence of at least one of the enumerated aggravating circumstances, the determination of the weight to be accorded the aggravating and mitigating circumstances is not a fact which must be proved beyond a reasonable doubt. Instead, it is a balancing process. 731 P.2d at 1005.

■■■■ Appellant further alleges the trial court erred in failing to instruct the jury that it had the option to return a life sentence regardless of its findings respecting aggravating and mitigating circumstances. Reviewing for fundamental error only as the Appellant failed to request such an instruction, we find no error warranting reversal or modification of sentence.

In *Walker v. State,* 723 P.2d at 284, the appellant claimed error in the refusal to give his requested instruction on "jury nullification". Defined as "the jury's exercise of its inherent 'power to bring in a verdict of [acquittal] in the teeth of both the law and facts'", we found that most courts have uniformly held that a defendant is not entitled to such an instruction.

Appellant also contends that the trial court erred in instructing the jury not to allow sympathy, sentiment or prejudice to enter into its deliberations. This argument was rejected in *Fox v. State,* 779 P.2d 562, 574–575 (Okl.Cr.1989). We are not per-

**1150** 

suaded to deter from that position. *See also Moore v. State,* 788 P.2d at 401. Accordingly, this assignment of error is denied.

### V. MANDATORY SENTENCE REVIEW

██ Pursuant to 21 O.S.Supp.1987, § 701.13(C), we must determine (1) whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor, and (2) whether the evidence supports the jury's finding of an aggravating circumstance as enumerated in 21 O.S.1981, § 701.12. Having reviewed the record, we cannot say the jury was influenced by passion, prejudice, or any other arbitrary factor contrary to 21 O.S.Supp.1987, § 701.13(C).

The jury found the existence of three aggravating circumstances: (1) the defendant was previously convicted of a felony involving the use or threat of violence to the person; (2) the murder was especially, heinous, atrocious or cruel; and (3) the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. We find that each aggravating circumstance was supported by sufficient evidence. 21 O.S.1981, § 701.12(1), (4) and (7).

Accordingly, finding no error warranting reversal or modification, the judgment and sentence for First Degree Murder is AFFIRMED.

LANE, P.J., and JOHNSON, J., concur.

BRETT, J., not participating.